# KANSAS CITY, FORT SCOTT & MEMPHIS RAILWAY COMPANY *v.* BOTKIN, SECRETARY OF STATE OF THE STATE OF KANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 450. Submitted January 7, 1916.—Decided February 21, 1916.

The State cannot lay a tax on interstate commerce in any form by imposing it either upon business constituting such commerce or on the privilege of engaging in it, or upon the receipts as such derived therefrom.

Whether a state tax has such a direct relation to interstate commerce as to be an exercise of power prohibited by the commerce clause depends upon the operation and effect of the tax as enforced and

not upon the manner in which the taxing scheme has been characterized.

The State has authority to tax a domestic corporation for the privilege of being a corporation; and such a tax is not necessarily invalid because measured by the capital stock, part of which may represent capital not subject to the taxing power of the State.

A State is not debarred from imposing a tax upon the granted privilege of being a corporation, because the corporation may be engaged in interstate commerce.

The validity of each tax must be decided upon its own facts, and a tax within the taxing power of the State will not be condemned as repugnant to the Federal Constitution unless its natural operation and effect render it a prohibited exaction.

The tax imposed by chapter 135, Kansas Laws of 1913, on the privilege of being a corporation is not laid upon interstate commerce or receipts therefrom or fluctuating with the volume of interstate business, but is simply graduated according to paid up capital with a reasonable maximum; and it is not, as to a domestic corporation engaged in both interstate and intrastate commerce, invalid either as a violation of the commerce clause as taxing interstate commerce or of the due process clause of the Fourteenth Amendment, as taxing property beyond the jurisdiction of the State.

95 Kansas, 261, affirmed.

THE facts, which involve the constitutionality under the commerce and due process clauses of the Federal Constitution and the construction of the statute of Kansas of 1913 imposing annual taxes on corporations, are stated in the opinion.

*Mr. R. R. Vermilion* and *Mr. W. F. Evans* for plaintiff in error:

The tax involved is not in lieu of property tax. The statute provides no method for ascertaining proportion of stock of domestic corporations devoted to Kansas business. The statute imposes a burden on interstate commerce and seeks to tax property beyond the jurisdiction of the State of Kansas. *West. Un. Tel. Co.* v. *Kansas,* 216 U. S. 31.

There is no distinction between foreign and domestic

corporations. *West. Un. Tel. Co.* v. *Kansas*, 216 U. S. 36; *Phila. & Southern S. S. Co.* v. *Pennsylvania*, 122 U. S. 326; *Galveston, Harrisburg &c. Ry.* v. *Texas*, 210 U. S. 217; *Meyer* v. *Wells, Fargo & Co.*, 223 U. S. 298; *Ludwig* v. *West. Un. Tel. Co.*, 216 U. S. 146.

A corporation may pay under protest and recover taxes. *Atchison, Topeka &c. Ry.* v. *O'Connor*, 223 U. S. 280.

This court cannot reshape the statute. *Meyer* v. *Wells, Fargo & Co.*, 223 U. S. 298; *United States Exp. Co.* v. *Minnesota*, 223 U. S. 335; *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68; *Crane Co.* v. *Looney*, 218 Fed. Rep. 260, can be distinguished and do not apply.

The statute denies due process and equal protection of the laws.


*Mr. S. M. Brewster*, Attorney General of the State of Kansas, *Mr. James P. Coleman, Mr. W. P. Montgomery* and *Mr. J. L. Hunt* for defendant in error:

The act in question, as applied to plaintiff in error, does not regulate or burden interstate commerce. It imposes an excise tax upon the right or privilege of the plaintiff in error to exist as a corporation under the laws of the State. *Railway Co.* v. *Sessions*, 95 Kansas, 261; *Society for Savings* v. *Coite*, 6 Wall. 594; *Hamilton Mfg. Co.* v. *Massachusetts*, 6 Wall. 632; *Provident Inst. for Savings* v. *Massachusetts*, 6 Wall. 611; *Home Ins. Co.* v. *New York*, 134 U. S. 594.

The State has full power to impose such a privilege tax. Cases *supra* and *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305; *Philadelphia R. R.* v. *Pennsylvania*, 15 Wall. 284; *Philadelphia S. S. Co.* v. *Pennsylvania*, 122 U. S. 326; *Minot* v. *Railway Co.*, 18 Wall. 206.

Such a franchise tax, if otherwise valid, may be computed or measured in amount by the amount of the capital stock of the corporation employed in part in carrying on

interstate commerce. *Flint* v. *Stone Tracy Co.*, 220 U. S. 107; *U. S. Exp. Co.* v. *Minnesota*, 223 U. S. 335; *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68.

The statute imposing the tax provides that the amount to be paid for the privilege for which it is required shall be determined by reference to the capital employed in exercising that privilege, and such capital, or the property in which such capital is invested, is not itself taxed. *Home Ins. Co.* v. *New York*, 134 U. S. 594; *Cornell Steamboat Co.* v. *Sohmer*, 235 U. S. 549.

The statute in question, as applied to domestic railway corporations, does not burden interstate commerce. *Philadelphia R. R.* v. *Pennsylvania*, 15 Wall. 284; *Philadelphia S. S. Co.* v. *Pennsylvania*, 122 U. S. 326; *Minot* v. *Railway Co.*, 18 Wall. 206; *Ferry Co.* v. *East St. Louis*, 107 U. S. 365; *Ashley* v. *Ryan*, 153 U. S. 436; *Railroad Co.* v. *Maryland*, 21 Wall. 456.

The question involved is not within the rule of law determined in *West. Un. Tel. Co.* v. *Kansas*, 216 U. S. 1; *Pullman Co.* v. *Kansas*, 216 U. S. 56; see *Railway Co.* v. *Sessions*, 95 Kansas, 261.

The other cases cited by plaintiff in error can be distinguished.

There is no denial of due process or equal protection of the laws.

MR. JUSTICE HUGHES delivered the opinion of the court.

By Chapter 135 of the Laws of 1913, of Kansas, every domestic corporation is required to pay to the Secretary of State an annual fee which is graduated according to the amount of its paid-up capital stock. When this capital stock does not exceed $10,000, the fee is $10; when it exceeds $10,000 but is not over $25,000, the fee is $25; and there are further increases, graduated as stated, until the maximum fee of $2,500 is reached, that sum

· being payable in all cases where the paid-up capital stock exceeds $5,000,000. The plaintiff in error is a railroad · corporation organized under the laws of Kansas, and its road extends into several States. It has a paid-up capital stock of $31,660,000. On March 31, 1914, it paid to the Secretary of State, under protest, the required fee of · $2,500 and brought this action to recover the amount, insisting that the tax is a direct burden upon interstate commerce and is laid upon property outside the State, and hence is invalid under the Federal Constitution. The Supreme Court of Kansas sustained the tax, thus defining its nature: "The fee collected is a tax upon the right of corporate existence—the franchise granted by the State to be a corporation—to do business with the advantages associated with that form of organization." 95 Kansas, 261. ·

It must be assumed, in accordance with repeated decisions, that the State cannot lay a tax on interstate commerce 'in any form,' by imposing it either upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts as such derived from it. *State Freight Tax Cases*, 15 Wall. 232; *Philadelphia & Southern S. Co.* v. *Pennsylvania*, 122 U. S. 326, 336, 344; *Leloup* v. *Mobile*, 127 U. S. 640; *Lyng* v. *Michigan*, 135 U. S. 161, 166; *McCall* v. *California*, 136 U. S. 104; *Galveston, Harrisburg &c. Ry.* v. *Texas*, 210 U. S. 217, 228; *West Un. Tel. Co.* v. *Kansas*, 216 U. S. 1, 36, 37; *Pullman Co.* v. *Kansas*, 216 U. S. 56, 65; *Meyer* v. *Wells, Fargo & Co.*, 223 U. S. 298; *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68, 83. And, further, in determining whether a tax has such a direct relation to interstate commerce as to be an exercise of power prohibited by the commerce clause, our decision must regard the substance of the exaction—its operation and effect as enforced—and cannot depend upon the manner in which the taxing scheme has been characterized. *Galveston, Harrisburg &c. Ry.*

v. *Texas, supra; U. S. Expr. Co.* v. *Minnesota,* 223 U. S.
335, 346; *St. Louis Southwestern Ry.* v. *Arkansas,* 235
U. S. 350, 362.

Examining the statute in the present case, we see no
reason to doubt the accuracy of the description of the
tax by the state court. We take it to be simply a tax on
the privilege of being a corporation,—on the primary
corporate franchise granted by the State. The authority
of the State to tax this privilege, or franchise, has always
been recognized and it is well settled that a tax of this
sort is not necessarily rendered invalid because it is meas-
ured by capital stock which in part may represent property
not subject to the State's taxing power. Thus, in *Society
for Savings* v. *Coite,* 6 Wall. 594, 606, 607, the power to
levy the franchise tax was deemed to be 'wholly unaf-
fected' by the fact that the corporation had invested in
Federal securities; and in *Home Ins. Co.* v. *New York,*
134 U. S. 594, 599, 600, it was held that a tax upon the
privilege of being a corporation was not rendered invalid
because a portion of its capital (the tax being measured
by dividends) was represented by United States' bonds.
These cases were cited with distinct approval, and the
rule they applied in distinguishing between the subject
and the measure of the tax was recognized as an estab-
lished one, in *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 165.
It is also manifest that the State is not debarred from
imposing a tax upon the granted privilege of being a
corporation, because the corporation is engaged in inter-
state as well as intrastate commerce. *Delaware Railroad
Tax,* 18 Wall. 206, 231, 232; *State Railroad Tax Cases,*
92 U. S. 575, 603; *Philadelphia & Southern S. S. Co.* v.
*Pennsylvania, supra; Ashley* v. *Ryan,* 153 U. S. 436;
*Cornell Steamboat Co.* v. *Sohmer,* 235 U. S. 549, 559, 560.
And, agreeably to the priniciple above mentioned, it has
never been, and cannot be, maintained that an annual tax
upon this privilege is in itself, and in all cases, repugnant

to the Federal power merely because it is measured by authorized or paid-up capital stock. The selected measure may appear to be simply a matter of convenience in computation and may furnish no basis whatever for the conclusion that the effort is made to reach subjects withdrawn from the taxing authority. We have recently had occasion (*Baltic Mining Co.* v. *Massachusetts, supra*), to emphasize the necessary caution that 'every case involving the validity of a tax must be decided upon its own facts'; and if the tax purports to be laid upon a subject within the taxing power of the State, it is not to be condemned by the application of any artificial rule but only where the conclusion is required that its necessary operation and effect is to make it a prohibited exaction.

In *Philadelphia & Southern S. S. Co.* v. *Pennsylvania, supra,* the State had laid "a tax of eight-tenths of one per centum upon the gross receipts of said company for tolls and transportation." As the court said: "The tax was levied directly upon the receipts derived by the company from its fares and freights for the transportation of persons and goods between different States, and between States' and foreign countries, and from the charter of its vessels which was for the same purpose." It was necessarily concluded that the tax was imposed upon interstate commerce. In *Galveston, Harrisburg &c. Ry.* v. *Texas, supra,* the tax upon the railroad company was "equal to one per centum of its gross receipts." The court held that this was "merely an effort to reach the gross receipts, not even disguised by the name of an occupation tax, and in no way helped by the words 'equal to.'" By the statute which was under review in *West Un. Tel. Co.* v. *Kansas, supra,*—as was said in *Flint* v. *Stone Tracy Co.*, 220 U. S., p. 163, summarizing that case—the State "undertook to levy a graded charter fee upon the entire capital stock of one hundred millions of dollars of the Western Union Telegraph Company, a foreign corporation, and engaged in

commerce among the States, as a condition of doing local business within the State of Kansas. This court held, looking through forms and reaching the substance of the thing, that the tax thus imposed was in reality a tax upon the right to do interstate business within the State, and an undertaking to tax property beyond the limits of the State; that whatever the declared purpose, when reasonably interpreted, the necessary operation and effect of the act in question was to burden interstate commerce and to tax property beyond the jurisdiction of the State, and it was therefore invalid." To the same effect were *Pullman Co.* v. *Kansas, supra,* and *Ludwig* v. *West Un. Tel. Co.,* 216 U. S. 146. The act before the court in *Meyer* v. *Wells, Fargo & Co., supra,* which provided for what was called a "gross revenue tax," was deemed to be "so similar to the Texas statute held bad" in the case of *Galveston, Harrisburg &c. Ry.* v. *Texas,* as to deserve a similar condemnation. On the other hand, in *U. S. Exp. Co.* v. *Minnesota, supra,* it appeared that the reference to gross receipts was only intended fairly to measure a tax upon a subject within the taxing power of the State, and the tax was sustained. And, in the case of *Baltic Mining Co.* v. *Massachusetts, supra,* where a tax on foreign corporations was measured by the authorized capital stock and was limited to $2,000, the court also reached the conclusion "that the authorized capital is only used as the measure of a tax, in itself lawful, without the necessary effect of burdening interstate commerce," and that hence the legislation was within the authority of the State. It is true that in that case it was pointed out that the taxing act did not apply to corporations engaged in railroad, telegraph, etc., business, or to those corporations whose business is interstate commerce; but it was also distinctly stated that the products of the corporations before the court were "sold and shipped in interstate commerce," and that to that extent they were "engaged

in the business of carrying on interstate commerce" and were "entitled to the protection of the Federal Constitution against laws burdening commerce of that character." It was because the tax, although measured by authorized capital stock, could not in view of its limitations be regarded as imposing a direct burden upon interstate commerce that the tax was upheld. 231 U. S., pp. 68, 86, 87.

In the present case, the tax is not laid upon transactions in interstate commerce, or upon receipts from interstate commerce either separately or intermingled with other receipts. It does not fluctuate with the volume of interstate business. It is not a tax imposed for the privilege of doing an interstate business. It is a franchise tax—on the privilege granted by the State of being a corporation—and while it is graduated according to the amount of paid-up capital stock the maximum charge is $2,500 in the case of all corporations having a paid-up capital of $5,000,000, or more. This is the amount imposed in the present case, where the corporation has a capital of $31,660,000. We find no ground for saying that a tax of this character, thus limited, is in any sense a tax imposed upon interstate commerce.

For similar reasons, the contention cannot be sustained that the tax was one on property beyond the jurisdiction of the State. Undoubtedly, a tax may be in form a privilege tax and yet, in substance, may be a tax on property. But the present tax cannot be regarded as a property tax at all.

*Judgment affirmed.*