(No. 15333.—Decree affirmed.)

THE CHICAGO AND EASTERN ILLINOIS RAILWAY COMPANY, Appellee, *vs.* EDWARD E. MILLER, Trustee, Appellant.

*Opinion filed June 20, 1923—Rehearing denied October 4, 1923.*

1. ESTOPPEL—*when party is not estopped to assert invalidity of statute because of compliance with its provisions.* Where a person voluntarily accepts the benefits of a statute he will thereafter be precluded from challenging its validity if no question of public policy or public morals is involved, but where money is paid under pressure of severe statutory penalties or disastrous effect to business, or where a party is compelled, under such duress, to make a choice of action in accordance with the provisions of a statute, he is not thereby estopped from later asserting his rights or recovering money involuntarily paid.

2. PUBLIC UTILITIES—*when railroad corporation is not estopped to seek refunding of fee paid under protest.* A railroad corpora-

309—17

tion engaged in interstate commerce, which under protest pays the fee required by section 31 of the Public Utilities act for the approval by the Commerce Commission of a proposed issue of stock certificates and bonds, is not estopped to maintain a bill to enjoin the State Treasurer from paying the money into the treasury and to require the fee to be refunded on the ground that the statute is in conflict with section 20*a* of the Interstate Commerce act; and the complainant is entitled to the relief prayed where the alleged estoppel is the only defense made.

Appeal, from the Circuit Court of Sangamon county; the Hon. Elbert S. Smith, Judge, presiding.

Edward J. Brundage, Attorney General, Albert D. Rodenberg, and William E. Trautmann, for appellant.

George B. Gillespie, (Homer T. Dick, George M. Gillespie, and Thomas E. Gillespie, of counsel,) for appellee.

Mr. Justice Thompson delivered the opinion of the court:

This case concerns the validity of a charge made by the Commerce Commission for a certificate approving bonds issued by the Chicago and Eastern Illinois Railway Company and secured by mortgage of its property. Article 3 of the Public Utilities act provides that the right of public utilities to issue stocks and bonds shall be exercised under such rules and regulations as the commission may prescribe, requires public utilities to submit their issues to the commission for approval, declares all stock certificates and bonds of the character involved in this proceeding void if issued without an order of the commission authorizing the same, and imposes severe penalties for unauthorized issues. Appellee, an Illinois corporation, engaged in interstate commerce, was authorized by the Interstate Commerce Commission to issue stock in the sum of $46,186,150 and mortgage bonds in the sum of $40,762,500. Because of the provisions of the Pub-

lic Utilities act, appellee applied to the Illinois Commerce Commission for approval of the issuance of said stocks and bonds, at the same time contending that the State law was without effect because in conflict with section 20*a* of the Interstate Commerce act, which requires a carrier to have its issues of stocks and bonds approved by the Interstate Commerce Commission, and which provides that "the jurisdiction conferred upon the commission by this section shall be exclusive and plenary, and a carrier may issue securities and assume obligations for liabilities in accordance with the provisions of this section without securing approval other than as specified herein." The Commerce Commission granted the permission requested, and pursuant to section 31 of the Public Utilities act charged a fee of $40,762.50, which fee the law requires to be paid before the securities shall be issued. Under an agreement that the State Treasurer should hold the money as trustee pending the determination of the right of the State to demand and collect this fee, appellee accepted the grant as required by its terms and deposited $40,762.50 with Edward E. Miller, State Treasurer, as trustee, but protested in writing against the charge, and gave notice that it paid under duress to escape statutory penalties and to prevent the revocation of the certificate. Appellee filed its bill in the circuit court of Sangamon county asking that appellant be enjoined from paying the fund into the State treasury and that he be directed to return the fund to appellee. The prayer was granted and this appeal followed.

The only objections to the decree urged by the Attorney General are that the application for authority to issue the stock and bonds was voluntarily filed with the Illinois Commerce Commission and the fee voluntarily paid to the State Treasurer, and that appellee is therefore estopped from challenging the jurisdiction of the Commerce Commission. Appellee contends that the bonds could not be marketed without the approval of the State body and that its application was made under duress of commercial necessity.

Where a person voluntarily accepts the benefits of a statute, he will, as a general rule, thereafter be precluded from challenging its validity if no question of public policy or public morals is involved. (*Grand Rapids and Indiana Railway Co.* v. *Osborn,* 193 U. S. 17, 24 Sup. Ct. 310; *Musco* v. *United Surety Co.* 196 N. Y. 459, 90 N. E. 171.) Before there can be an estoppel the acceptance of the benefits of the statute must be voluntary. So where money is paid under pressure of severe statutory penalties or disastrous effect to business, it is held that the payment is involuntary and that the money may be recovered. (*Gaar, Scott & Co.* v. *Shannon,* 223 U. S. 468, 32 Sup. Ct. 236; *Robertson* v. *Frank Bros. Co.* 132 U. S. 17, 10 Sup. Ct. 5; *Swift & Courtney & Beecher Co.* v. *United States,* 111 U. S. 22, 4 Sup. Ct. 244.) It is reasonable that a man who denies the legality of a tax should have a clear and certain remedy. It is true that appellee chose to comply with the plain provisions of the Public Utilities act rather than suffer the losses certain to follow in an effort to market the stock and bonds without the approval of the Commerce Commission, but this does not make its act voluntary. Conduct under duress always involves a choice, but this court has held that the making of a choice under such circumstances does not estop the person acting under duress from later asserting his rights. (*Spaids* v. *Barrett,* 57 Ill. 289; *Chicago and Alton Railroad Co.* v. *Chicago, Vermilion and Wilmington Coal Co.* 79 id. 121; *Pemberton* v. *Williams,* 87 id. 15.) In *Atchison, Topeka and Santa Fe Railway Co.* v. *O'Connor,* 223 U. S. 280, 32 Sup. Ct. 216, the company brought an action to recover a capital stock tax paid under protest. In disposing of the point the court said: "In this case the law, besides giving an action of debt to the State, provides that every corporation that fails to pay the tax shall forfeit its right to do business within the State until the tax is paid, and also shall pay a penalty of ten per cent for every six months, or fractional part of six months, of de-

fault after May 1 of each year. It may be that the forfeiture of the right to do business would not be authoritatively established except by a *quo warranto* provided for in a following section, but before or without the proceeding the effect of the forfeiture clause upon the plaintiff's subsequent contracts and business might be serious, and in any event the penalty would go on accruing during all the time that might be spent before the validity of the defense could be adjudged. As appears from the decision below, plaintiff could have had no certainty of ultimate success, and we are of opinion that it was not called upon to take the risk of having its contracts disputed and its business injured, and of finding the tax more or less nearly doubled in case it finally had to pay. In other words, we are of opinion that the payment was made under duress."

There seems to us to be no valid distinction between the case at bar and *Union Pacific Railroad Co.* v. *Public Service Com. of Missouri,* 248 U. S. 67, 39 Sup. Ct. 24. In that case, as in this, the railroad company made application to the State commission for authority to issue its bonds for the sole purpose of making them marketable. In allowing recovery of the taxes paid the court said: "The certificate was a commercial necessity for the issue of the bonds. The statutes, if applicable, purported to invalidate the bonds and threatened grave penalties if the certificate was not obtained. The railroad company and its officials were not bound to take the risk of these threats being verified. Of course, it was for the interest of the company to get the certificate. It always is for the interest of a party under duress to choose the lesser of two evils. But the fact that a choice was made according to interest does not exclude duress."

The chancellor properly ordered the tax assessed refunded, so the decree of the circuit court is affirmed.

                                  '     *Decree affirmed.*