(No. 17722.—Reversed and remanded.)
The Chicago and Eastern Illinois Railway Company, Appellee, *vs.* Louis L. Emmerson, Appellant.

*Opinion filed October 22, 1927—Rehearing denied Dec. 19, 1927.*

1. Railroads—*section 96 of Corporation act of 1919 applies to railroad companies.* While section 96 of the Corporation act of 1919 does not in terms require that railroad companies incorporated in Illinois pay fees for permission to increase their capital stock, there is nothing in the act to indicate a different rule for the application of such tax to a railway corporation and there is express provision for equal application of the statute to public utility corporations and other corporations for pecuniary profit.

2. Same—*section 20a of Interstate Commerce act does not affect power of State to assess fee for increase in capital stock.* Section 20a of the Interstate Commerce act, in regard to the issuing of securities by railroad corporations, does not purport to regulate the organization of a railroad or the amendment of its charter provisions concerning the amount of capital stock it may issue and does not affect the right or power of the State of incorporation to assess a fee for increasing the capital stock of such corporations, as the charter of a railroad company is its contract with the State, and the State, only, can consent to a change in its charter provisions.

3. Corporations—*fee assessed under section 96 of Corporation act is not a burden on interstate commerce.* The fee assessed under section 96 of the Corporation act of 1919 as an initial fee for incorporation or for the increase of capital stock applies only to a domestic corporation for the privilege of incorporation or of

amending its charter provisions to increase its capital stock and is not a tax upon property outside the State, and is not, therefore, a burden on interstate commerce or an offense against the due process clause of the State or Federal constitution.

Appeal from the Circuit Court of Sangamon county; the Hon. Elbert S. Smith, Judge, presiding.

Oscar E. Carlstrom, Attorney General, B. L. Catron, and Albert D. Rodenberg, for appellant.

George B. Gillespie, (Gillespie & Gillespie, of counsel,) for appellee.

Mr. Justice Stone delivered the opinion of the court:

Appellee filed its bill in the circuit court of Sangamon county to enjoin appellant, as Secretary of State and individually, from paying into the State treasury of Illinois $23,068.10 assessed and collected as the initial fee on the amount of an increase of the capital stock of appellee, and for an accounting, and to compel a refund of such fee to appellee.

The bill alleges that prior to December 9, 1921, appellee was a railroad corporation organized and existing under the laws of the State of Illinois, with a capital stock of $50,000, and on the last named date the stockholders adopted a resolution increasing the capital stock of the corporation to $46,186,200, consisting of 220,511 shares of preferred stock and 241,351 shares of common stock of the par value of $100 each; that on December 13, 1921, appellee presented a certified copy of the resolution to appellant to be filed and recorded in his office, as required by law, and tendered the fee of one dollar due for such services; that appellant refused to receive and file the certified copy without the payment of an additional $23,068.10; that without the filing and recording of the resolution appellee would have been unable to obtain, construct and operate its railroad and conduct its business and increase its capital

stock, which had been found wholly insufficient for that purpose, and to enable it to carry out a plan and agreement of re-organization of the Chicago and Eastern Illinois Railroad Company, a prior existing corporation, which agreement had been approved by the United States district court for the northern district of Illinois, eastern division, in a foreclosure proceeding; that delay in filing and recording the certified copy of said resolution would have resulted in great financial injury to appellee; that thereupon, under compulsion and duress of appellant, the fee of $23,068.10 was paid, together with the sum of $30 as filing and recording fees. The bill prayed that an injunction issue restraining appellant from paying said money into the State treasury, and for a decree compelling appellant to return the money so paid under duress. A demurrer was filed to the bill and overruled, and appellant electing to abide his demurrer a decree was entered in accordance with the prayer of the bill, requiring appellant to return $23,098.10, which included $30 which appellee admits was due as fees. Appellant brings the case to this court for review.

The briefs raise and discuss three questions: First, whether section 96 of the general Corporation act of 1919 applies to appellee and requires the payment of the fees therein provided before the application of appellee increasing its capital stock can be filed; second, whether the State of Illinois has the authority to levy a fee or tax where an increase of capital stock is authorized or such matter is exclusively under the provisions of the Interstate Commerce act, regulating the sale and distribution of such securities by a railroad corporation engaged in interstate commerce; third, whether the imposition of such fees fixed by section 96 of the general Corporation act on a domestic railroad corporation engaged in interstate commerce, if not under the control of the Interstate Commerce Commission, violates any provision of the State or Federal constitution or the due process clause of the fourteenth amendment.

Appellant and appellee agree that prior to the general Corporation act of 1919 the law was settled in this State that fees were payable under section 10*a* of chapter 53, relating to fees, and that this section was repealed by the Corporation act of 1919. Appellant contends that section 96 of the Corporation act is applicable to appellee. Appellee contends it is not, and that the only section of the statute in force at the time of the filing of this bill was section 10 of chapter 53 as it now reads, and is the only statute in force requiring appellee to pay fees, and that the one dollar tendered fully complies with the requirements of the statute.

The first question is whether the following provision of section 96 of the general Corporation act, that "each public utility corporation shall pay to the Secretary of State the same fees as are required to be paid for incorporation by other corporations organized for pecuniary profit," (Smith's Stat. 1925, p. 668,) applies to railroad corporations as to all other public utility corporations. The argument of appellee is, that as it was incorporated under the provisions of chapter 114 of our statutes it does not come within the provisions of the Corporation act, and therefore is exempt from paying any other fee than the one dollar tendered. As the statutes now in force read, all fees and franchise taxes which corporations were required to pay under the Corporation act, including public utility corporations and excepting those specifically enumerated, are fixed by sections 96 to 107, inclusive, of that act. The initial fee as provided for in section 96 is one-twentieth of one per cent upon the amount of capital stock a corporation is authorized to have, and the same section provides that each public utility corporation shall pay the same fees as are required to be paid for incorporation by other corporations organized for pecuniary profit. Section 99 (Smith's Stat. 1925, p. 668,) provides that the same fee shall be paid by a public utility corporation for renewal of its charter or extension

327—37

of the term of its existence as in case of new corporations, and section 105 provides that the annual license fee or franchise tax which each corporation for profit, including railroads, (and excepting insurance corporations,) is required to pay, shall be the rate of one-twentieth of one per cent.

Counsel for appellee argue that section 96 of the Corporation act of 1919 does not provide for the collection of such fees as are sought to be charged here; that that act repeals the Fees act of 1895, and while it makes provision for initial fees in the organization of railroads, yet it does not include railroads in the provision for fees to be taxed on increase of capital stock; that the language of section 96, "each public utility corporation shall pay to the Secretary of State the same fees as are required to be paid for incorporation by other corporations organized for pecuniary profit," does not mean that railroads shall pay fees for the increase of their capital stock. Counsel argue that since this court held in *New York Central Railroad Co.* v. *Stevenson,* 277 Ill. 474, that the Fees act of 1895, providing for the collection of fees for increase of the capital stock of utility corporations, was repealed by implication by section 31 of the Public Utilities act, authorizing the Public Utilities Commission to charge every public utility receiving permission to issue stock, stock certificates, bonds, notes, etc., ten cents for each $100 thereof, and as section 96 of the act of 1919 does not specifically provide for the payment of fees on the increase of capital stock of railroads, there is no law requiring such payment. After the opinion in the *New York Central Railroad case* was filed, the legislature on June 29, 1917, amended section 31 of the Public Utilities act, omitting stocks and stock certificates from the provisions thereof requiring the payment of fees. At the same time it amended section 1 of the Corporation act of 1895 (Laws of 1917, p. 304,) so as to provide that a public utility shall file its papers in the office of the Secretary of State and shall pay to that official the fees provided by that

act on stock authorized by any commission which may be by law empowered to pass on and authorize the issuance of stock, and the same fees should be paid before the issuance of such stock, and further provided: "And for each subsequent increase of stock authorized by such commission, such public utilities corporation shall pay to the Secretary of State, fees at the same rate before the issuance thereof in any amount."

In *People* v. *Hinrichsen,* 161 Ill. 223, it was held that section 10*a* of the Fees act applied to railroad corporations. Counsel for appellee contend, however, that as the act of 1895 was expressly repealed by the Corporation act of 1919, the acts amendatory of the act of 1895, including the act of 1917, were also repealed, leaving no specific requirement for the payment of such fees, and there is therefore no justification for this tax.

Section 96 reads as follows: "The Secretary of State shall charge and collect an initial fee of one-twentieth of one percentum upon the amount of the capital stock which the corporation is authorized to have, but in no case shall such fee be less than twenty dollars, and a like fee upon any subsequent increase and in addition thereto the same fee as that required for filing other certificates of amendment. In the event that the corporation has capital stock of no par value, its shares, for the purpose of fixing the fee, shall be considered to be of the par value of one hundred dollars per share. Each public utility corporation shall pay to the Secretary of State the same fees as are required to be paid for incorporation by other corporations organized for pecuniary profit."

Section 31 of the Public Utilities act having repealed by implication the Fees act of 1895, relating to the payment of fees for the permission to increase the capital stock of public utility corporations, the amendment of that section in 1917 by omitting therefrom stocks and stock certificates issued by public utility corporations had the effect of leav-

ing the act of 1895 in full force as it related to fees to be paid for the permission to increase the capital stock of railroad companies.

In *People* v. *Rose,* 210 Ill. 582, this court, in considering the Corporation act of 1895, said in the opinion in that case that no reason appears why the legislature should fix a higher fee to be paid by other corporations for pecuniary profit than that required of railway companies. We are of the opinion that the provisions of the act of 1919 were substituted for those of the act of 1895 touching this matter, and that section 96 of the Corporation act of 1919 should operate equally upon public utility corporations and other corporations for pecuniary profit. While section 96 does not in terms require that railroad companies pay fees for permission to increase their capital stock, yet there is nothing in the act to indicate a different rule for the application of a tax of that character to a railway corporation. (*Armstrong* v. *Emmerson,* 300 Ill. 54.) In fact, the language and the history of the legislation tend to show that it was the intention of the legislature that railroad companies should be included.

Appellee's second point is, that even though it be said that section 96 of the Corporation act of 1919 applies to railway companies in cases of application for increase of capital stock, nevertheless section 20*a* of the Interstate Commerce act took from the jurisdiction of the State all control over the issuance of stock by a railway corporation already in existence. Section 20*a* of the United States statutes reads as follows: "From and after 120 days after this section takes effect it shall be unlawful for any carrier to issue any share of capital stock or any bond or other evidence of interest in or indebtedness of the carrier (hereinafter in this section collectively termed 'securities'), or to assume any obligation or liability as lessor, lessee, guarantor, indorser, surety or otherwise, in respect of the securities of any other person, natural or artificial, even though

permitted by the authority creating the carrier corporation, unless and until, and then only to the extent that, upon application by the carrier, and after investigation by the commission of the purposes and uses of the proposed issue and the proceeds thereof, or of the proposed assumption of obligation or liability in respect of the securities of any other person, natural or artificial, the commission by order authorizes such issue or assumption. The commission shall make such order only if it finds such issue or assumption (*a*) is for some lawful object within its corporate purposes, and compatible with the public interest, which is necessary or appropriate for or consistent with the proper performance by the carrier of service to the public as a common carrier, and which will not impair its ability to perform that service, and (*b*) is reasonably necessary and appropriate for such purposes." (41 Stat. L. 494, 1920 Supp. F. S. A. 120.)

Appellee argues that since this section refers to capital stock as securities, the issuance of such stock is therefore brought within the purview of the Interstate Commerce act and the State has no authority or control over such issuance of stock. It is also contended that the imposition of such tax or fee is an unwarranted burden on interstate commerce and is wanting in that due process required by the State and Federal constitutions. It is apparent from the language of section 20*a* of the Interstate Commerce act, as well as from the arguments presented in the United States senate at the time of its passage by that body, that the purpose of that act is to protect the public against the unwarranted issuance of railway and other interstate utility securities. The appellee is a domestic corporation organized under the laws of Illinois, and this is a distinction to be drawn between the instant case and those cases cited by counsel for appellee concerning the application of section 20*a*. A reading of section 20*a* and the decisions affecting it, shows clearly that the act does not purport to

regulate the organization of a railroad or the amendment of its charter provisions concerning the amount of capital stock it may issue, but is intended to regulate and control the issue and sale of securities after the railroad company has been organized or its charter provisions have been so enlarged as to permit the increase of the stock. The charter of a railroad company is its contract with the State. The State, only, can consent to a change in its charter provisions. The charter, whether it be original or amended, is the grant of the right to do business or to be a corporation. Since this is so, the power of the State to assess a fee for the granting of such right is clear. *Kansas City, Ft. Scott and Memphis Railway Co.* v. *Kansas,* 240 U. S. 227; *Armstrong* v. *Emmerson, supra; People* v. *Rose, supra.*

*Missouri Pacific Railroad Co.* v. *Public Utilities Com.* 292 Ill. 427, is cited by appellee in support of its position that section 20*a* controls this question. In that case the Missouri Pacific Railroad Company, a foreign corporation, desired to issue bonds secured by all of its property, the greater portion of which was outside the State of Illinois. It was sought under section 31 of the Public Utilities act to require the payment of certain fees there provided. This court held, however, that section 31, so far as it related to foreign corporations, was invalid, for the reason that it imposed a burden on interstate commerce and levied a tax on property not within the confines of the State.

In *Public Service Com.* v. *Union Pacific Railway Co.* 248 U. S. 67, cited by appellee, the corporation under consideration was a foreign corporation engaged in interstate commerce. The Missouri Supreme Court, in which State the case arose, was of the view that while the statute should not have been applied to the corporation, yet the validity of the statute could not be questioned by the Union Pacific Railroad Company because it had voluntarily applied to the Public Utilities Commission for authority to issue

bonds. The United States Supreme Court reversed the judgment on the ground that the statute compelled the application to be made to the Missouri commission, and the company should not, therefore, be estopped from contesting the validity.

Appellee cites also *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Commerce Com.* 315 Ill. 461, wherein it was held that extensions of railroads having been brought under the supervision of the Interstate Commerce Commission by the Interstate Commerce act, that was a matter no longer under the jurisdiction of the Illinois Commerce Commission. The argument here is that the extension of a railway is analogous to an increase of its stock. The parts of the Interstate Commerce act under consideration in that case were paragraphs 18 to 22 of section 1, (25 Stat. at L. 379,) providing that no extension of railway lines can be built or operation thereon had without a certificate of convenience and necessity from the Interstate Commerce Commission. It will be readily seen by comparison of this section with section 20a of the act regulating the issuance of securities by interstate carriers, that the subject matters treated in these sections are not the same. The extension of a railroad and the amendment of a corporate charter seem not so similar as to bear analogy.

*Airway Electric Appliance Corp.* v. *Day,* 266 U. S. 71, cited by appellee, involved an annual franchise tax assessed under an Ohio statute which discriminated against a foreign corporation. Such a case is not on all-fours with the case at bar. The fee charged in this case is not based upon property or business done in this or other States but is an initial charge for the authority granted to increase the stock of a domestic corporation. A reading of the *Airway case* will disclose that it in effect holds that the State is empowered to charge an initial fee for the issuance of stock. To the same effect is *Roberts & Schaefer Co.* v. *Emmerson,* 46 Sup. Ct. 375. Appellee admits that it is liable to pay

an initial fee for incorporation but argues that the fee in question here is not an initial fee. We are of the opinion, however, that a fee charged either for the issuance of a charter or a fee for its amendment must fall into the same class.

Counsel for appellee argue that this court in effect sustained its contention in this case by the decision in *Chicago and Eastern Illinois Railway Co.* v. *Miller,* 309 Ill. 257. The question there involved was the validity of a charge made by the Illinois Commerce Commission for a certificate approving bonds issued by the railway company, secured by a mortgage. The only question raised on the record in that case was whether the corporation, by making application for the certificate to the commission, was estopped from contesting the power of the State to collect the fee provided by section 31 of the Public Utilities act. It was there held that section 20*a* of the Interstate Commerce act had superseded the jurisdiction conferred under section 31 of the Public Utilities act, and that the Public Utilities Commission could not, therefore, assess a charge for the issuance of bonds. The distinction between that case and the case at bar lies in the fact that in that case the application was for permission to issue bonds, while in the instant case the tax is a fee collected for the right to change its charter provisions. The former is under the jurisdiction of the Interstate Commerce Commission; the latter is a matter entirely under State control. (*Kansas City, Ft. Scott and Memphis Railway Co.* v. *Kansas, supra.*) The distinction between the right of a State to impose a tax on an original corporation for an increase of capital stock, and to impose such a tax on the issuance of securities based on the property of the corporation, seems apparent. The former touches the right to be a certain corporation, while the latter affects the right of a certain corporation to do a certain thing. To hold that while the State may (as is admitted by appellee) levy the fees pro-

vided in section 96 for the incorporation of a railroad it may not levy fees on an increase of its capital stock would be to open the door to a defeat of the purpose of the act, for a railroad corporation could under such holding become incorporated with an insignificant capital stock and immediately increase it to many millions, thus avoiding the recognized right of the State to a fee for the privilege of doing business conferred on such railroad.

We are of the opinion that section 20*a* of the Interstate Commerce act does not deprive the legislature of this State of authority to levy a tax of this character for consenting to an increase of capital stock. A tax of this character is applicable only to a domestic corporation for the privilege of incorporation or of amending its charter provisions to increase its capital stock and is not a tax upon property outside the State, and is not, therefore, a burden on interstate commerce or an offense against the due process clause of the State or Federal constitution. *Kansas City, Ft. Scott and Memphis Railway Co.* v. *Kansas, supra; Kansas City, M. & B. Railroad Co.* v. *Stiles,* 242 U. S. 111; *Roberts & Schaefer Co.* v. *Emmerson, supra; Armstrong* v. *Emmerson, supra.*

The circuit court erred in holding that the injunction should issue and the fees be re-paid to appellee.

Some question is raised as to the payment of $30 filing fee by appellee, but as appellee in its brief admits that this was properly charged, it is not necessary to consider that matter further.

The judgment of the circuit court is reversed and the cause is remanded, with directions to sustain the demurrer to the bill.

*Reversed and remanded, with directions.*