## INTERNATIONAL SHOE CO. v. SHARTEL, Atty. Gen. of Missouri, et al.

District Court, W. D. Missouri, C. D. November 2, 1928.

No. 223.

Thompson & Thompson, Jas. D. Williamson, and R. E. Blake, all of St. Louis, Mo., for complainant.

Stratton Shartel, Atty. Gen., and Walter E. Sloat, Asst. Atty. Gen., for defendants.

John F. Green, of St. Louis, Mo., amicus curiæ.

Before STONE, Circuit Judge, and REEVES and OTIS, District Judges.

REEVES, District Judge. Complainant, a corporation of Delaware, but doing business under a license in the state of Missouri, seeks by this proceeding to restrain proper officials of the state of Missouri from

levying and collecting certain franchise taxes. Such taxes are imposed by operation of law. Complainant questions the constitutionality of the Corporation Annual Franchise Tax Law of said state. This challenge is made because of the decision of the Supreme Court of Missouri in State v. Pierce Petroleum Corporation, 2 S. W. (2d) 790. It was held in that case that section 12 of the Stock Corporation Act (Laws Mo. 1921, p. 661) amended the Franchise Tax Law. Rev. St. Mo. 1919, § 9836, as re-enacted by Laws Ex. Sess. 1921, p. 122, § 1. The Annual Franchise Tax Law of Missouri, so far as pertinent here, provides, among other things, that:

"Every corporation not organized under the laws of this state, and engaged in business in this state, shall pay an annual franchise tax to the state of Missouri equal to one-twentieth of one per cent. of the par value of its capital stock and surplus employed in business in this state, and for the purposes of this article such corporation shall be deemed to have employed in this state that proportion of its entire capital stock and surplus that its property and assets in this state bears to all its property and assets wherever located."

Domestic corporations were subject to the same rule. Subsequently there was enacted the Stock Corporation Law. This provided, among other things, for the issuance of shares of stock without nominal or par value. Previously no such provision had been made under the Missouri law. Section 12 of said act reads as follows:

"For the purpose of computing any organization taxes required to be paid under the laws of this state, and such tax or taxes, if any, the determination of which is based on the par value of shares of stock and not on the number of shares or the actual or ascertained value thereof and for the purpose of any statutory provision limiting the relation between indebtedness and capital stock, each share of stock without any nominal or par value, under the provisions of this act, shall be considered the equivalent of a share having a nominal or par value of one hundred dollars."

By the decision in the Pierce Petroleum Case, supra, the above provision was made applicable in computing the franchise tax on all corporations, both domestic and foreign.

The complainant has gross assets in the aggregate of $97,169,076.24. Its assets located in the state of Missouri are of the market value of $52,956,249.12. Aside from its preferred stock issued and outstanding, with a stipulated par value, it has issued and outstanding 3,760,000 shares of stock without nominal or par value.

As stated, the Supreme Court of Missouri, in Pierce Petroleum Case, supra, held in substance that the mode of computing values under the Franchise Tax Law should be that prescribed by said section 12. The taxing authorities accordingly applied the valuation thus fixed by statute to complainant's stock and made the computation prescribed by said section 12. This gave complainant's issued shares, without nominal or par value, a valuation of $376,000,000. The formula so employed raised complainant's franchise tax from approximately $25,000 under former computations to a sum in excess of $100,000.

Complainant asserts variously that it is deprived of its property without due process of law, that its interstate commerce is unduly burdened, that there is an absence of uniformity, that there is no lawful proportion as to value, and that it has been denied the equal protection of the law.

1. All of the above questions, save as to the effect on interstate commerce, were settled in Roberts & Schaefer Co. v. Emmerson, 271 U. S. 50, 46 S. Ct. 375, 70 L. Ed. 827, 45 A. L. R. 1495, and numerous other decisions.

2. The remaining question is to determine whether the tax places such a burden upon interstate commerce as to warrant interference by this court. As postulates to the consideration of this question, the following principles may be assumed:

"The state may tax the corporation's property regularly or permanently located within its limits, where the ascertainment of the amount assessed is made 'dependent in fact on the value of its property situated within the state.'" Western Union Telegraph Co. v. Kansas, 216 U. S. 1, loc. cit. 26 and 27, 30 S. Ct. 190, 197 (54 L. Ed. 355); Postal Telegraph Co. v. Adams, 155 U. S. 688, loc. cit. 696, 15 S. Ct. 268, 39 L. Ed. 311; Leloup v. Mobile, 127 U. S. 640, loc. cit. 649, 8 S. Ct. 1380, 32 L. Ed. 311.

The federal court "must respect in the fullest degree the sensitiveness of Congress in hedging about the sovereign power of taxation by the states and precluding temporary federal judicial interference with it save in clear cases." Chicago G. W. Ry. Co. v. Kendall, 266 U. S. 94, loc. cit. 101, 45 S. Ct. 55, 57 (69 L. Ed. 183).

"One challenging the validity of a state enactment on the ground that it is repugnant to the commerce clause is not necessarily bound by the legislative declarations

of purpose. * * * It is open to him to show that in their practical operation its provisions directly burden or destroy interstate commerce." Foster-Fountain Packing Co., Inc., et al. v. Haydel et al. (No. 68) 49 S. Ct. 1, 73 L. Ed. ——, opinion by Mr. Justice Butler, delivered October 15, 1928.

Applying the foregoing principles in the consideration of the case at bar, it is obvious that this tax is not upon property, but the amount of the tax is measured by property located within the state of Missouri; that the state authorities were careful to compute the tax upon such property,. and that there was no effort to impose a tax measured upon property not situated within the state, nor was such its effect. The method of computation was fixed by statute, and the taxing authorities were bound thereby.

In the case of Hump Hairpin Co. v. Emmerson, 258 U. S. 290, 42 S. Ct. 305, 66 L. Ed. 622, the Supreme Court had practically the same question as here presented. A West Virginia corporation had its place of business in the state of Illinois. It transacted practically all of its business there. It was engaged, however, in interstate commerce. The statute of Illinois, which was challenged, was very similar to the statute questioned in this case. A tax was computed upon the capital stock of the foreign corporation, "represented by property located and business transacted" in the state of Illinois. Mr. Justice Clarke, who wrote the opinion for the court, said that:

"While a state may not use its taxing power to regulate or burden interstate commerce, * * * on the other hand it is settled that a state excise tax which affects such commerce, not directly, but only incidentally and remotely, may be entirely valid where it is clear that it is not imposed with the covert purpose or with the effect of defeating federal constitutional rights. As coming within this latter description, taxes have been so repeatedly sustained where the proceeds of interstate commerce have been used as one of the elements in the process of determining the amount of a fund (not wholly derived from such commerce) to be assessed, that the principle of the cases so holding must be regarded as a settled exception to the general rule. * * * The turning point of these decisions is, whether in its incidence the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of, or restraint upon it, or whether it affects it only incidentally or remotely so that the tax is not in reality a burden, although in form it may touch and in fact distantly affect it."

The proposition is restated that:

"No formula has yet been devised by which it can be determined in all cases whether or not such a tax is valid."

Then, referring to the Illinois statute, the court continued:

"Clearly the statute is not a disguised attempt to tax interstate commerce. On the contrary, its purpose plainly is to differentiate state from interstate business and to impose the tax only on the former. Construed with other statutes the act accords equal treatment to domestic and foreign corporations, and clearly in this case property of the company beyond the jurisdiction of the State is not taxed."

To the same effect was the rule announced in St. Louis S. W. Ry. Co. v. Arkansas, 235 U. S. 350, 35 S. Ct. 99, 59 L. Ed. 265. In the latter case, the court based its decision upon Postal Telegraph Cable Co. v. Adams, 155 U. S. 688, loc. cit. 696, 15 S. Ct. 268, 269 (39 L. Ed. 311), where Mr. Chief Justice Fuller said:

"But property in a state belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a state, and may take the form of a tax for the privilege of exercising its franchises within the state, *if the ascertainment of the amount is made dependent in fact on the value of its property situated within the state."*

The court also cited the case of Atlantic, etc., Telephone Co. v. Philadelphia, 190 U. S. 160, 23 S. Ct. 817, 47 L. Ed. 995, where the principle is announced that a state is not prevented from imposing ordinary property taxes upon property having a situs within its territory, although it be employed in interstate commerce.

In Kansas City, Ft. S. & M. Ry. Co. v. Kansas, 240 U. S. 227, 36 S. Ct. 261, 60 L. Ed. 617, the Supreme Court had a somewhat similar situation arising in the state of Kansas. Mr. Justice Hughes, delivering the opinion of the court, said:

"The authority of the state to tax this privilege, or franchise, has always been recognized, and it is well settled that a tax of this sort is not necessarily rendered invalid because it is measured by capital stock which in part may represent property not subject to the state's taxing power."

In support of his opinion he cited the case of Baltic Mining Co. v. Commonwealth

of Massachusetts, 231 U. S. 68, 34 S. Ct. 15, 58 L. Ed. 127. This latter case dealt with questions very similar to the questions raised in the instant case.

In the case of Kansas City, etc., R. Co. v. Stiles, 242 U. S. 111, 37 S. Ct. 58, 61 L. Ed. 176, the validity of an Alabama statute was questioned. A similar tax had been provided for in that state. Mr. Justice Day, who delivered the opinion of the court, said, among other things:

"It is urged that this tax is void because it undertakes to tax property beyond the jurisdiction of the state, and imposes a direct burden upon interstate commerce. Objections of this character were so recently discussed, and the previous cases in this court considered, in Kansas City, etc., Railway Co. v. Kansas, 240 U. S. 227 [36 S. Ct. 261, 60 L. Ed. 617], that it would be superfluous to undertake extended discussion of the subject now. In that case, after a full review of the previous decisions in this court, it was held that each case must depend upon its own circumstances, and that while the state could not tax property beyond its borders, it might measure a tax within its authority by capital stock which in part represented property without the taxing power of the state. As to the objection based upon the due process clause of the Constitution, we think that principle controlling here. There is no attempt in this case to levy a property tax; a franchise tax within the authority of the state is in part measured by the capital stock representing property owned in other states."

In the case at bar, both domestic and nondomestic corporations are subject to the same tax. The state bases its tax upon the property of the corporation having its situs in Missouri exactly as in the case of domestic companies. To all intents and purposes, therefore, it would bring the instant case squarely within the decision of Roberts & Schaefer Co. v. Emmerson, supra. Moreover, an almost parallel case was determined by the Supreme Court of the United States in the case of Margay Oil Corporation v. Applegate, Attorney General, 273 U. S. 666, 47 S. Ct. 458, 71 L. Ed. 830. In that case, as in this, a Delaware corporation doing business in Arkansas became subject to the Franchise Tax Law of that state. The complaint was made there, as here, to the effect that an arbitrary valuation was used as a basis for computing the tax. The Supreme Court of Arkansas in Margay Oil Corporation v. Applegate, Attorney General, 169 Ark. 96, 272 S. W. 845, sustained the tax, and its judgment

was affirmed in 273 U. S. 666, 47 S. Ct. 458, 71 L. Ed. 830. The affirmance of said case by the Supreme Court was upon the authority of Roberts & Schaefer v. Emmerson, supra.

3. The attack upon the Corporation Act because of an alleged defect in its title is wholly without merit. Section 28, article 4, of the Missouri Constitution, forbids that any bill "shall contain more than one subject" and directs that such subject "shall be clearly expressed in its title." The subject of the act under consideration was authority to certain corporations to issue a variety of stocks, the regulation thereof, and "prescribing the method of determining the number of shares and capital of corporations issuing shares in such manner."

Section 12 of the act, against which complaint is made, is not a statute providing for taxes. It merely undertakes to provide a method of computing taxes upon corporations issuing stock without nominal or par value. In providing for the issuance of such stock it was natural and proper for the Legislature to specify how same should be treated for taxation purpose. This was a part of the regulation mentioned in the title. It was part of the regulation stipulated in the title. It did no more than embody a rule clearly anticipated in the title, and this rule became a formula in the hands of the state taxing authorities for computing a tax on both the domestic and foreign corporations.

In the matter of giving the stock in question a fanciful and unreal value, the statute is directed to the par value of all stocks, without regard to actual value as a basis of computation. This might work inequitably in some cases, as in this, but is not a matter with which we are concerned.

In view of the above, the application for temporary injunction should be denied.