THE WESTERN CARTRIDGE COMPANY, Appellant, *vs.* LOUIS
L. EMMERSON, Secretary of State, Appellee.

*Opinion filed April 20, 1929—Rehearing denied June 6, 1929.*

FYFFE & CLARKE, (COLIN C. H. FYFFE, of counsel,)
for appellant.

OSCAR E. CARLSTROM, Attorney General, (B. L. CA-
TRON, of counsel,) for appellee.

Mr. CHIEF JUSTICE DEYOUNG delivered the opinion of
court:

The Western Cartridge Company, a corporation organ-
ized under the laws of Delaware and licensed to do busi-
ness in this State, filed its bill of complaint in the circuit
court of Sangamon county against Louis L. Emmerson,
Secretary of State, to enjoin him from paying to the State
Treasurer the sum of money which he collected from the
complainant as its annual franchise tax for the year begin-
ning July 1, 1927, or, in any event, to enjoin such payment

of the portion of the tax attributable to what the complainant denominated as its interstate business. A temporary injunction against the deposit of the money with the State Treasurer was granted. A hearing upon the bill, the answer of the defendant and an agreed statement of facts resulted in the rendition of a decree dismissing the bill for want of equity. The complainant prosecutes this appeal from that decree. The court ordered that the temporary injunction should continue in force during the pendency of the appeal.

Appellant is engaged in the manufacture and sale, among other things, of small-arms ammunition. Its principal office and factory are located at East Alton, Illinois. It has a branch office and factory at Springfield, in this State. Appellant receives at its principal office, upon forms provided by it, orders for its manufactured products from persons and corporations in Illinois and elsewhere. Written acceptances of these orders are sent to the buyers. The order forms provide for the delivery of the goods to the means of conveyance at one or the other of appellant's factories in this State free of charge and thence their shipment to the buyers' respective places of business. The goods sold are packed, marked with the buyers' names and addresses and delivered to common carriers at appellant's factories. The contracts with the carriers are evidenced by bills of lading or shipping receipts, and in the performance of these contracts the carriers transport the goods to their respective destinations, not only in Illinois but also in other States and in foreign countries.

The license fee or franchise tax of which appellant complains was collected pursuant to section 105 of the general Corporation act as amended by the act approved May 12, 1927, (Laws of 1927, p. 358; Cahill's Stat. 1927, p. 656; Smith's Stat. 1927, pp. 716, 717;) which reads: "Each corporation for profit, including railroads, except insurance companies, heretofore or hereafter organized

under the laws of this State or admitted to do business in this State, and required by this act to make an annual report, shall pay an annual license fee or franchise tax to the Secretary of State of five cents on each one hundred dollars of the proportion of its issued capital stock, or amount to be issued at once, represented by business transacted and property located in this State, but in no event shall the amount of such license fee or franchise tax be less than that required by this act of corporations having no property or business in this State. In the event that the corporation has stock of no par value, its shares, for the purpose of fixing such fee, shall be taken and considered at the amount of the consideration received or to be received by such corporation for such shares." In compliance with this section appellant filed its annual report in the office of the Secretary of State. It set forth in the report that its capital stock had a par value of $5,701,800; that it possessed property valued at $6,924,804.92, of which $6,894,903.27 was situated in Illinois; that its business for the year 1926 aggregated $11,670,925.51, of which $1,919,-882.73 represented goods sold and delivered in this State, and that the balance, or $9,751,042.78, reported as interstate commerce, constituted the total of shipments made to customers outside of the State. In computing appellant's franchise tax the Secretary of State considered all the business done by appellant, according to its report, as having been transacted in Illinois, and based the tax on the proportion of its issued capital stock represented by the business so transacted and its property located in this State. The inclusion in the computation of the shipments made by appellant to customers outside of Illinois increased the franchise tax to the extent of $1328.21. The whole tax, including this sum, amounted to $2808.03, and it was paid by appellant. The payment was made under protest, not only with respect to the whole tax but also the portion specifically mentioned.

Appellant's contention for a reversal of the decree is that the inclusion of the business which it reported as interstate in the computation of the license fee or franchise tax for the privilege of doing business in this State is inconsistent with the provisions of section 105 of the general Corporation act and that it is a direct and illegal burden on interstate commerce.

Section 105 of the general Corporation act, to the extent that it prescribes the method of determining the license fee or franchise tax which a foreign corporation doing business in this State shall pay, is similar to section 5*b* of the Foreign Corporation act, which became effective on July 1, 1917, (Laws of 1917, p. 306,) and which provided: "It shall be the duty of the Secretary of State to propound interrogatories from time to time to officers of such foreign corporations doing business in this State to ascertain the proportion of capital stock actually being represented by property located and business transacted in the State of Illinois, which proportion shall be determined by averaging the percentage of the total business of the corporation transacted in Illinois with the percentage of the total tangible property located in this State." This section was construed and applied in *American Can Co.* v. *Emmerson,* 288 Ill. 289. It was there held that while the State may not regulate or impose burdens upon interstate commerce, yet where the circumstances are such as to indicate no purpose or necessary effect to burden such commerce, it may require a license fee based upon the proportion of a foreign corporation's capital stock represented by its property located and business transacted in the State, and that section 5*b* did not discriminate against foreign corporations and in favor of domestic corporations of like character.

Subsequently, in *Hump Hairpin Manf. Co.* v. *Emmerson,* 293 Ill. 387, it appeared that the company, a foreign corporation, had its factory, manufactured its products and accepted orders for them and completed its contracts

of sale in this State. Following the decision in *American Can Co.* v. *Emmerson, supra,* this court held that the whole of the corporation's capital stock was represented by the property located and the business transacted in Illinois although approximately nine-tenths of its manufactured products were shipped to customers in other States, and that a license fee under section 5*b* of the Foreign Corporation act, based on the entire capital stock of the corporation, was not a tax on interstate commerce. To review that decision the corporation prosecuted a writ of error from the Supreme Court of the United States in *Hump Hairpin Manf. Co.* v. *Emmerson,* 258 U. S. 290. The plaintiff in error contended there, as appellant does here, that, notwithstanding the manner in which the company conducted its business, that portion which was done with residents of States other than Illinois constituted interstate commerce, and that to include it in the company's business transacted in this State for the purpose of ascertaining the latter's percentage of the whole rendered the act under which the computation was made unconstitutional because the tax so assessed was a burden upon interstate commerce. In denying the contention and affirming the judgment of this court the Supreme Court of the United States said that while a State might not use its taxing power to regulate or burden interstate commerce, it was settled that a State excise tax which affected such commerce, not directly but only incidentally and remotely, might be valid where it was clear that it was not imposed with the covert purpose or with the effect of defeating Federal constitutional rights; that taxes had been repeatedly sustained where the proceeds of interstate commerce were considered in the process of determining the amount of a fund, not wholly derived from such commerce, to be subjected to assessment; that the act in question was not a disguised attempt to tax interstate commerce but that its purpose plainly was to differentiate State from interstate business and to impose the tax only

on the former; that, construed with other statutes, the act accorded equal treatment to foreign and domestic corporations and that property beyond the jurisdiction of the State was not taxed; that to require foreign corporations to pay for the privilege of doing business in a State was a familiar and often-approved form of taxation; that the tax assessed did not impose any direct or substantial burden upon interstate commerce, and that the assessment, so far as such commerce was concerned, was incidental, remote and unimportant, and therefore constitutional.

The decision of the Supreme Court of the United States in *Hump Hairpin Manf. Co.* v. *Emmerson, supra,* is decisive of this case. Appellant's factories and offices were located, its manufacturing operations were conducted, orders for its goods were accepted and shipments of its products originated in this State exclusively. Assuming that the business done by appellant with residents of States other than Illinois was interstate business, yet the license fee or franchise tax was not directly imposed or computed upon the proceeds of interstate commerce. By the provisions of section 105 of the general Corporation act other factors necessarily enter into the calculation. All of appellant's business was transacted in this State, and it was properly included in the process of determining the proportion of its issued capital stock, represented by business transacted and property located in Illinois, upon which the franchise tax might be computed. Such a tax does not constitute a direct or substantial burden upon interstate commerce.

The decree of the circuit court is affirmed.

*Decree affirmed.*