525 F.2d 178
 ILLINOIS CENTRAL RAILROAD COMPANY, Plaintiff-Appellee,
v.
Michael J. HOWLETT, Secretary of State of the State of
Illinois, Defendant-Appellant.
PEOPLE OF ILLINOIS ex rel. William J. SCOTT, Attorney
General, and Michael J. Howlett, Secretary of
State of the State of Illinois,
Counter-Plaintiffs-Appellants,
v.
ILLINOIS CENTRAL RAILROAD COMPANY, an Illinois Corporation,
et al., Counter-Defendants-Appellees.
 No. 75-1013.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 29, 1975.
Decided Nov. 7, 1975.
Rehearing and Rehearing En Banc Denied Dec. 8, 1975.
 
 Don H. Reuben, Joseph P. Antonow, Irwin I. Zatz, J. Herzl Segal, Barnet Hodes, Chicago, Ill., for plaintiff-appellee.
 William J. Scott, Atty. Gen., Herbert L. Caplan, Asst. Atty. Gen., Chicago, Ill., for defendant-appellant.
 Before HASTINGS, Senior Circuit Judge, and SPRECHER and BAUER, Circuit Judges.
 SPRECHER, Circuit Judge.
 
 
 1
 This appeal involves the sua sponte application by this court of the anti-tax-injunction statute, 28 U.S.C. § 1341, to preclude federal jurisdiction of a complaint seeking a declaration of the collectability of the Illinois corporate franchise tax.
 
 
 2
 * Illinois Central Railroad Company (IC) brought this action praying that the court declare "(t)hat plaintiff does not owe any franchise tax to the State of Illinois for 1973 or any subsequent years." The complaint alleged that the Interstate Commerce Commission had approved a Plan of Reorganization of IC under Section 5 of the Interstate Commerce Act, whereby IC "shall proceed to dissolve and such dissolution shall be effective upon the tendering of a certificate of Dissolution for filing in the office of the Secretary of State of Illinois." The complaint further alleged that the IC has tendered a certificate of dissolution but the Illinois Secretary of State "has refused to acknowledge that (IC) has been dissolved as a corporation" and seeks payment of a franchise tax of $158,943.78. IC alleged that "(s)aid claim for franchise tax asserted by (the Secretary of State) against (IC) has no legal basis. . . ."
 
 
 3
 The Secretary of State filed an answer denying that IC was legally dissolved as an Illinois corporation or that it is no longer in existence. At the same time the Secretary of State, together with the "People of the State of Illinois ex rel. . . . Attorney General of the State of Illinois" filed a counterclaim, naming three counter-defendants in addition to IC, seeking to impress a trust in favor of the People of the State of Illinois on properties transferred or to be transferred by IC to one or more of the counter-defendants.
 
 
 4
 Upon the motions of the counter-defendants, the district court dismissed the counterclaim without prejudice on the grounds that the Secretary of State lacked the authority to raise the issues of the counterclaim and that the Attorney General was not a defendant to the complaint in a position to counterclaim. The court concluded that "(i)f the Illinois Attorney General wishes to litigate the Counterclaim issues, he must proceed by an independent action in an appropriate forum."
 
 II
 28 U.S.C. § 1341 provides that:
 
 5
 The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.
 
 
 6
 In Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 299, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943), the Supreme Court said in regard to this provision:
 
 
 7
 It is true that the Act of Congress speaks only of suits "to enjoin, suspend, or restrain the assessment, levy, or collection of any tax" imposed by state law, and that the declaratory judgment procedure may be, and in this case was, used only to procure a determination of the rights of the parties, without an injunction or other coercive relief. It is also true that that procedure may in every practical sense operate to suspend collection of the state taxes until the litigation is ended. But we find it unnecessary to inquire whether the words of the statute may be so construed as to prohibit a declaration by federal courts concerning the invalidity of a state tax. For we are of the opinion that those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure.[1]
 
 
 8
 Although neither the Secretary of State, nor the Attorney General on his behalf, raised 28 U.S.C. § 1341 in the district court or here, that statute cannot be waived by the parties[2] and its application may be made sua sponte by the court of appeals. In Great Lakes, the Supreme Court said that "it is the court's duty to withhold (declaratory) relief" when, in the words of Section 1341, there is "a plain, speedy and efficient remedy . . . in the courts of" the state.[3] 319 U.S. at 300-301, 63 S.Ct. at 1074; City of Houston v. Standard-Triumph Motor Co., 347 F.2d 194, 198 (5th Cir. 1965), cert. denied, 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466 (1966).
 
 
 9
 The Illinois corporate franchise tax sought to be avoided by the complaint was assessed pursuant to the Illinois Business Corporation Act, Ill.Rev.Stats., ch. 32, § 157.131 et seq. Substantially the same tax as previously provided in Section 105 et seq. of the Illinois Corporation Act was at issue in Stratton v. St. Louis Southwestern Ry. Co., 284 U.S. 530, 52 S.Ct. 222, 76 L.Ed. 465 (1932), where the Supreme Court concluded that the State of Illinois provided legal remedies sufficient to preclude federal jurisdiction to adjudicate the validity of the franchise tax.[4]
 
 
 10
 The State of Illinois parties have argued that federal jurisdiction attached because of the approval of the Plan of Reorganization by the Interstate Commerce Commission under Section 5 of the Act. This argument was disposed of by the Supreme Court in Seaboard Air Line Railroad Co. v. Daniel, 333 U.S. 118, 122-23, 68 S.Ct. 426, 429, 92 L.Ed. 580 (1948):
 
 
 11
 So far as the appellant's complaint is concerned, this is not the kind of action to "set aside" a Commission order of which the federal district courts have exclusive jurisdiction. While the action does involve the scope and validity of a Commission order, the relief requested in the complaint was the removal of an obstruction to the railroad's obedience to the order, not its suspension or annulment. Nor did the answer seek to have the enforcement of the order enjoined, although it did question its validity as a basis for the relief sought in the complaint.
 
 
 12
 The appellant was in this dilemma. Federal law required it to obey the order so long as it remained in effect; for a failure to abide by its terms serious federal penalties could be imposed on it. 49 U.S.C. §§ 10(1), 16(7), (8), (9), (10). On the other hand, South Carolina statutes provided penalties for obedience to the order, which South Carolina officials asserted were enforceable against appellant despite the Commission's order. There was thus a bona fide controversy between appellant and the state officials over the validity of the order. Appellant wanted to obey the order; the state officials insisted appellant must obey their statutes instead. Federal district courts have not been granted special jurisdiction to review and confirm orders of the Commission at the suit of railroads wishing to obey such orders.
 
 
 13
 Under the foregoing circumstances appellant was not compelled to wait until someone who had standing to attack the Commission's order might decide to seek its annulment in a federal district court. It properly sought relief from a court which could obtain jurisdiction of the parties whose refusal to recognize the order gave rise to its predicament. And the state court then had power, because of the issues raised by the complaint and because of the relief requested, to determine whether the order, properly interpreted, did exempt appellant from compliance with the state railroad corporation laws and, if so, whether the Commission had transcended its statutory authority in making the order. Illinois Cent. R. Co. v. Public Utilities Commission, 245 U.S. 493, 502-505 (38 S.Ct. 170, 173, 174, 62 L.Ed. 425). See Lambert Run Coal Co. v. Baltimore & Ohio R. Co., 258 U.S. 377, 381, 382 (42 S.Ct. 349, 350, 351, 66 L.Ed. 671); Central New England R. Co. v. Boston & A. R. Co., 279 U.S. 415, 420, 421 (49 S.Ct. 358, 359, 360, 73 L.Ed. 770) (emphasis added).
 
 
 14
 The Illinois parties' argument that Seaboard merely holds that federal courts do not have exclusive jurisdiction when Section 5 is involved, is undoubtedly true, but under 28 U.S.C. § 1341 the existence of such a plain, speedy and efficient remedy in the state court is enough to bring Section 1341 into operation. Inasmuch as the state courts had the power to act despite the presence of the Section 5 aspects of the case, there are no "special circumstances" (Stratton, supra, 284 U.S. at 534, 52 S.Ct. 222) nor is this an "exceptional case" (Great Lakes, supra 319 U.S. at 299, 63 S.Ct. 1070) preventing the normal application of 28 U.S.C. § 1341. All of the allegations and prayers of the complaint were intertwined with the ultimate collection or non-collection of the Illinois franchise tax.
 
 
 15
 Inasmuch as the counterclaim was incidental to a claim for declaratory relief which in itself should not be entertained by the district court under the restraint of 28 U.S.C. § 1341, we vacate the dismissal of the counterclaim and remand the cause with directions to dismiss the complaint and the cause of action itself, which will have the effect of also disposing of the counterclaim.
 
 
 16
 Vacated and remanded.
 
 
 
 [1]
 In Samuels v. Mackell, 401 U.S. 66, 71, 91 S.Ct. 764, 767, 27 L.Ed.2d 688 (1971), the Court said: "The continuing validity of the Court's holding in the Great Lakes case has been repeatedly recognized and reaffirmed by this Court."
 
 
 [2]
 One of the additional counter-defendants raised the issue of federal jurisdiction over the complaint in both the district court and on appeal, and on oral argument here, counsel for IC and the other two counter-defendants expressly stated that those parties had no objection to dismissal of the entire cause of action as lacking federal jurisdiction because of 28 U.S.C. § 1341
 
 
 [3]
 In Perez v. Ledesma, 401 U.S. 82, 128, 91 S.Ct. 674, 698, 27 L.Ed.2d 701 (1971), Mr. Justice Brennan (concurring in part and dissenting in part) said in n. 17:
 The special reasons justifying the policy of federal non-interference with state tax collection are obvious. The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts. See generally, S.Rep.No.1035, 75th Cong., 1st Sess. (1937). These considerations make clear that the underlying policy of the anti-tax-injunction statute, 28 U.S.C. § 1341, relied on in Great Lakes, bars all anticipatory federal adjudication in this field, not merely federal injunctions (emphasis added).
 
 
 [4]
 The Supreme Court said 284 U.S. at 532-34, 52 S.Ct. at 223:
 Recovery of the tax may not be had, even though illegally exacted, unless its payment is procured by duress. See Richardson Lubricating Co. v. Kinney, 337 Ill. 122, 168 N.E. 886. But where the payment is of a corporate franchise tax like the present, made to avoid forfeiture of the franchise, which would result from nonpayment, there is such duress as entitles the taxpayer to recover. O'Gara Coal Co. v. Emmerson, 326 Ill. 18, 21, 156 N.E. 814; Western Cartridge Co. v. Emmerson, 335 Ill. 150, 166 N.E. 501. See Chicago & Eastern Illinois Ry. Co. v. Miller, 309 Ill. 257, 140 N.E. 823.
 (Ill.Rev.Stats., ch. 127, § 172 does not) impair the existing legal remedy, but supplements it by providing a method under the local procedure for staying payment over of the tax money, so that it may be available for the satisfaction of any judgment obtained against the collector. See Interstate Iron & Steel Co. v. Stratton, 340 Ill. 422, 172 N.E. 705; O'Gara Coal Co. v. Emmerson, supra; Hump Hairpin Mfg. Co. v. Emmerson, 293 Ill. 387, 127 N.E 746; Id., 258 U.S. 290 (42 S.Ct. 305, 66 L.Ed. 622).
 These cases recognize the continued existence in Illinois of the right to recover the tax. . . .
 There being a legal remedy for the recovery of the tax, no case is made for invoking the jurisdiction of equity to enjoin collection of it, in the absence of allegations setting up special circumstances which would render the legal remedy inadequate.
 In addition, Illinois has a Declaratory Judgment Act of its own, Ill.Rev.Stats., ch. 110, § 57.1. See City of Houston v. Standard-Triumph Motor Co., 347 F.2d 194, 199 (5th Cir. 1965), cert. denied 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466 (1966).