891 F.2d 1097
 Charles L. HARDWICK, Speaker of the General Assembly of the
State of New Jersey, et al., Appellants,
v.
Mario CUOMO, Governor of the State of New York, and James
Wetzler, Commissioner of Taxation and Finance,
State of New York.
 Nos. 89-5288, 89-5556.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 8, 1989.
Decided Dec. 19, 1989.
 
 William F. Dowd, Dowd & Reilly, Red Bank, N.J., James P. Kleier (argued), Morrison & Foerster, San Francisco, Cal., Paul H. Frankel, Morrison & Foerster, New York City, Richard S. Zackin, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for appellants.
 Robert Abrams, Atty. Gen. of the State of N.Y., R. Scott Greathead (argued), First Asst. Atty. Gen., Frederic L. Lieberman, Asst. Atty. Gen., New York City, for appellees.
 Before MANSMANN and GREENBERG, Circuit Judges, and GAWTHROP, District Judge*.
 GREENBERG, Circuit Judge.
 
 
 1
 This matter is before the court on appeals by plaintiffs-appellants from the denial of their motion for a preliminary injunction restraining the defendants-appellees, Mario Cuomo, Governor of New York, and James Wetzler, Commissioner of Taxation and Finance, State of New York, from enforcing certain portions of the Tax Reform and Reduction Act of 1987 of the State of New York and from a subsequent order of the district court dismissing the action for want of jurisdiction.
 
 
 2
 The factual and procedural background of the matter is as follows. The State of New York imposes a progressive personal income tax on residents and nonresidents from income generated in New York. For many years, up to and including 1987, the New York tax on nonresidents was computed by applying progressive tax rates to the nonresidents' income derived from New York sources without regard for total income. On the other hand, New York computed the tax of its own residents based on their total income, regardless of source, unless exempt from taxation by some provision of law.
 
 
 3
 Beginning in 1988, the Reform and Reduction Act changed the foregoing system. N.Y. Tax Law § 601 (McKinney 1987). Under that statute, which reduced the marginal progressive tax rates, the New York personal income tax for both residents and nonresidents is determined by initially computing the taxpayers' income derived from New York and non-New York sources. Then taxpayers are allowed adjustments for deductions, exemptions and credits without regard for residency and the same tax rate is applied to their resultant taxable income. However, nonresidents having income from non-New York sources should receive a reduction in the amount of tax owed because the tax calculated on nonresidents' New York taxable income will be multiplied by a fraction in which the numerator is the taxpayer's New York source income and the denominator is the taxpayer's federal adjusted gross income. Thus, if the New York source income is 50% of a nonresident taxpayer's total federal adjusted gross income, the nonresident taxpayer should pay a tax of one-half of what a similarly situated New York taxpayer would pay.[1]
 
 
 4
 In addition to the foregoing basic tax, in 1987 and 1988 New York assessed a tax with a maximum rate of three and two percent, respectively, on residents and nonresidents with New York adjusted gross incomes of $100,000 or more if they had unearned income.[2] N.Y. Tax Law § 601(d)(1) (McKinney 1987). Such taxpayers subtracted $100,000 from the lesser of either $200,000 or their New York adjusted gross income. The difference was then divided by $100,000. The resulting fraction, which obviously could not have a value of more than one over one, was then multiplied by the statutory tax rate for that year, three or two percent, to determine the tax rate for this additional tax. This rate was multiplied by a taxpayer's unearned income from interest and dividends to determine the additional tax base for unearned income. An adjustment was then made for nonresident taxpayers by multiplying this additional tax base by the same fraction (New York source income over federal adjusted gross income) used to adjust the nonresidents' overall income tax.[3]
 
 
 5
 The advantage to New York of the Reform and Reduction Act over the prior system with respect to nonresident taxpayers is apparent. The state will now calculate a nonresident's tax rate on the taxpayer's total income, including income from non-New York sources. Thus, the same rates will yield more taxes from the same income than would be generated under a system not considering out-of-state income. This can be readily demonstrated. For example, under the Reform and Reduction Act a New Jersey taxpayer with $25,000 of New York income and $25,000 of non-New York income will be subject to a tax rate based on $50,000, though under a system ignoring non-New York income the tax rate would be based solely on the New York taxable income of $25,000. While the above-described fraction would be $25,000 over $50,000, the resultant net tax to the nonresident taxpayer would exceed a tax calculated solely on the $25,000 of New York income because the tax is progressive. Therefore, from the viewpoint of at least some non-New York residents employed in New York, the title of the 1987 law as the Reform and Reduction Act, is euphemistic.[4]
 
 
 6
 Though many New Jersey residents work in New York, the impact of the Reform and Reduction Act when enacted apparently went largely unnoticed in New Jersey. Not surprisingly, however, when its effect was eventually recognized, some New Jersey residents employed in New York became disturbed, as they did not appreciate being "reformed" and "reduced" into marginal tax brackets higher than those that would have been applicable to them if the new tax rates were applied under the previous system, which disregarded their non-New York income.[5] Also, as might be expected, members of the New Jersey Legislature, mindful of the interests of New Jersey residents, took up cudgels for them. Accordingly, certain New Jersey residents employed in New York who thus pay taxes there, and members of the New Jersey Legislature, filed this action on March 8, 1989, challenging the enforcement of the Reform and Reduction Act.[6] As we have indicated, the defendants-appellees are New York's Governor and its Commissioner of Taxation and Finance. The plaintiffs-appellants' basic position is that the Reform and Reduction Act is unlawful as it imposes a tax on out-of-state taxpayers, who are obliged to pay New York income tax on the basis of income from all sources, including those outside of New York.
 
 
 7
 In their three-count amended complaint, the appellants contend that New York treats residents and nonresidents in a disparate and unequal fashion in violation of the privileges and immunities clause of the Constitution. They further contend that the New York scheme violates the equal protection clause of the Fourteenth Amendment as it discriminates in favor of residents as against nonresidents, places impermissible burdens on the rights of the residents of New Jersey to travel, do business and work in New York, and creates an arbitrary, discriminatory, irrational, and capricious classification between residents and nonresidents of New York. They assert that the Reform and Reduction Act taxes income from sources outside of New York in violation of the privileges and immunities clause and the due process and equal protection clauses of the Fourteenth Amendment. They also allege that because New Jersey grants a tax credit for taxes its residents pay in other jurisdictions, New Jersey will suffer an undue loss of revenue because of the Reform and Reduction Act, raising an "imminent threat that the taxpayers of New Jersey will be subject to either increased taxes or reduced government services." The appellants seek a declaration that the Reform and Reduction Act is unconstitutional, interlocutory and permanent injunctions against its enforcement, damages, and costs. In their jurisdictional allegations, they assert that the district court has federal question jurisdiction under 28 U.S.C. § 1331, jurisdiction under the civil rights acts, 28 U.S.C. § 1343 and 42 U.S.C. § 1983, and diversity jurisdiction, 28 U.S.C. § 1332.
 
 
 8
 After they filed their complaint, the appellants moved for a preliminary injunction. On April 4, 1989, the appellees filed an answer setting forth various separate defenses, and asserting that the court lacked jurisdiction because of the Tax Injunction Act of 1937, 28 U.S.C. § 1341. In addition, the appellees moved for summary judgment. On April 10, 1989, the district court heard argument on the application for the preliminary injunction and, on April 13, 1989, it filed its opinion and order denying the application. Hardwick v. Cuomo, No. 89-965 (D.N.J. April 12, 1989).
 
 
 9
 In its comprehensive but unreported opinion, the district court set forth the nature of the controversy, describing the application of the tax and the allegations of the complaint. The court indicated that the appellants had the burden to show that they have standing and that the court "has subject matter jurisdiction over an action to enjoin a state from levying a disputed tax." It held that the taxpayers have standing because the challenged sections of the Reform and Reduction Act subjected them to a higher percentage tax rate on their New York income than they would pay if the New York rates were applied only against their New York income.
 
 
 10
 The district court held, however, that the legislators do not have standing as they have not presented sufficiently concrete "personalized" injuries, and have suffered only political harm from the Reform and Reduction Act. The legislators alleged that the loss of revenue to New Jersey, attributable to the tax credit allowed New Jersey taxpayers for their New York income tax, raises an imminent threat that New Jersey taxpayers will be subject to either increased taxes or reduced services. The district court, however, dismissed this contention as making "no credible allegation that the effect of the new tax laws in New York will have more than a de minimis impact, if any, on the overall tax revenue of New Jersey." The court regarded this alleged harm, if it exists at all, as "speculative and conjectural." Thus, the court held that the taxpayers but not the legislators have standing.
 
 
 11
 The district court next considered the Tax Injunction Act, 28 U.S.C. § 1341, which provides:
 
 
 12
 The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.
 
 
 13
 The court pointed out that while the statute appeared, absent special circumstances, to deny it jurisdiction, the taxpayers contended that the district court had jurisdiction because the New York courts were unable to provide them with a plain, speedy and efficient remedy. The court characterized the taxpayers' argument as being that "New York law provides only for an uncertain judicial review of an administrative determination of a challenging taxpayer's liability, N.Y. Tax Law § 690(b) [McKinney 1987], and for actions for declaratory or injunctive relief from the tax pursuant to N.Y.Civ.Prac.L. & R. § 3001 [McKinney 1974]."
 
 
 14
 The district court explained that the taxpayers' main contention was that the statutory remedy is not a certain means to obtain redress because retrospective relief is unlikely. Thus, the taxpayers contended that even if they persuade the New York courts that the Reform and Reduction Act is unconstitutional, they will be unlikely to obtain refunds of taxes already paid. The court indicated that the taxpayers also contended that the New York procedures available to them are too burdensome, a class action is not available and, even if they are successful in a trial court, the New York courts might stay the judgment if the state appeals. In appellants' view, these circumstances established that New York does not provide a plain, speedy and efficient remedy.
 
 
 15
 The district court rejected the taxpayers' arguments. It held, citing California v. Grace Brethren Church, 457 U.S. 393, 408, 102 S.Ct. 2498, 2507, 73 L.Ed.2d 93 (1982), that in most circumstances the Tax Injunction Act precludes a district court from issuing an injunction enjoining the collection of state taxes, a restraint applicable to declaratory judgments as well. It pointed out that Congress intended to prevent federal court interference with the assessment and collection of state taxes because of the dangers of disrupting the means by which state government is maintained and of causing serious detriment to the public. The district court, citing Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447 (1932), indicated that the policy factors favoring federal court abstention in state tax matters "are very strong" and predate the Tax Injunction Act. The court also noted that the "plain, speedy and efficient" exception to the bar to federal court jurisdiction requires that the state court remedy meet "certain minimal procedural criteria." See Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 512, 101 S.Ct. 1221, 1229, 67 L.Ed.2d 464 (1981); California v. Grace Brethren Church, 457 U.S. at 411, 102 S.Ct. at 2509. The district court further set forth that a state court remedy is plain, speedy and efficient if it provides the taxpayer with a full hearing at which constitutional objections to the tax may be raised and judicially determined, even if a decision is not applied retroactively in a particular case.
 
 
 16
 The district court reviewed New York law and determined that it permits a taxpayer to contest a tax by making an administrative claim subject to administrative and then judicial review. It pointed out that the tax, to the extent disallowed, will be returned to a taxpayer and indicated that under N.Y.Civ.Prac.L. & R. § 3001 (McKinney 1974), a taxpayer may initiate a declaratory judgment action to challenge the tax. It noted that the Supreme Court in Tully v. Griffin, Inc., 429 U.S. 68, 75-76, 97 S.Ct. 219, 223-24, 50 L.Ed.2d 227 (1976), held that New York courts provide a plain, speedy and efficient remedy for constitutional claims. It also held that the remedy would be plain, speedy and efficient even if class-wide relief was unavailable. Thus, the court denied a preliminary injunction. The taxpayers and legislators immediately appealed from the order of April 13, 1989, denying a preliminary injunction.
 
 
 17
 After they appealed, the appellants filed a motion in this court seeking an emergency hearing. The motion was based on the concern that if the taxpayers paid their soon-to-be-due 1988 taxes, they could not be recovered. The appellees filed an answering affidavit executed by a New York Assistant Attorney General indicating that in the event that the taxpayers were successful in a state court action and followed proper New York procedures, taxes unconstitutionally collected would be returned. On April 17, 1989, we filed an order denying the appellants temporary relief, reciting that we were doing so in "reliance on the representation by the Assistant Attorney General of the State of New York that the state would be bound to refund moneys paid pursuant to an unconstitutional statute if such refund claims were timely filed" by the taxpayers.
 
 
 18
 On June 29, 1989, the district court granted the appellees' motion for summary judgment and dismissed the case because it lacked jurisdiction and, on July 3, 1989, appellants appealed from that order as well. The appellants then moved to consolidate the appeals and, on July 18, 1989, their motion was granted. We have jurisdiction over the appeals under 28 U.S.C. § 1292(a)(1) and 28 U.S.C. § 1291.[7]
 
 
 19
 Appellants make two basic points. Though acknowledging that New York does have procedures by which the taxpayers can challenge the Reform and Reduction Act and seek refunds of taxes unconstitutionally collected, they contend that New York does not provide the taxpayers with a plain, speedy and efficient judicial remedy for that purpose, as the New York courts have consistently refused to grant tax refunds when taxes are successfully challenged as unconstitutional. Furthermore, they contend that New York will grant an automatic stay of injunctive relief if the state files an appeal from a decision in a tax case, thus making it uncertain whether the taxpayers' federal rights will be adequately protected. Accordingly, in appellants' view, the Tax Injunction Act is not a bar to this action. The legislators additionally contend that they are suffering injury concrete, immediate and personal to them from the Reform and Reduction Act so that they have standing in this action. The legislators also assert that the Tax Injunction Act does not bar the action as to them as New York grants them no remedies at all.[8]
 
 
 20
 The appellants, however, though making reference in their brief to their claim that the Reform and Reduction Act is unconstitutional, only adumbrate the point. Thus, they seek a reversal of the orders denying the preliminary injunction and dismissing the action, and a remand to the district court to consider the merits of the case.
 
 
 21
 The appellees contend that the Tax Injunction Act deprived the district court of jurisdiction as to both the taxpayers and legislators. They further indicate in their brief that while they would have "preferred that the district court address the merits of plaintiffs' claim that [the Reform and Reduction Act's] challenged provisions are unconstitutional" and would "waive this subject matter jurisdiction defense" if they could, the court cannot accept a stipulation vesting it with subject matter jurisdiction that it does not have. They further contend that the Reform and Reduction Act imposes a nondiscriminatory tax on nonresidents' income derived from New York sources and thus is constitutional.
 
 
 22
 Appellees argue that the district court properly denied the application for a preliminary injunction because the appellants failed to demonstrate the probability of success on the merits and did not show that they faced irreparable harm from the Reform and Reduction Act. Furthermore, the appellees maintain that a balancing of the equities and the public interest favored denying the preliminary injunction. Finally, they contend that the legislators lack standing because they suffered no injury personal to them.
 
 
 23
 We will deal first with the appellees' offer in their brief to waive any suggestion of the lack of jurisdiction if they are able to do so.[9] That issue should be resolved initially, not only because its resolution could control our result, but because the principles it implicates demonstrate that the legislators as well as the taxpayers are subject to the Tax Injunction Act.
 
 
 24
 Absent the Tax Injunction Act, the district court conceivably could have exercised federal question jurisdiction under 28 U.S.C. § 1331 or, because of the alleged violation of appellants' civil rights, jurisdiction under 28 U.S.C. §§ 1343(a)(3) and (4), and the appellees concede as much.[10] Thus, the Tax Injunction Act, if applicable, deprived the district court of jurisdiction which it might otherwise have had.
 
 
 25
 Nevertheless, even though the Tax Injunction Act is intended to protect the taxing authorities acting under state law, it has been regularly held that they cannot waive its jurisdictional bar as it is a restraint on the courts, not the parties. See City of Burbank v. Nevada, 658 F.2d 708, 709 (9th Cir.1981); United Gas Pipe Line Co. v. Whitman, 595 F.2d 323, 330 (5th Cir.1979); Illinois Cent. R.R. Co. v. Howlett, 525 F.2d 178, 180 (7th Cir.1975), cert. denied, 424 U.S. 976, 96 S.Ct. 1482, 47 L.Ed.2d 746 (1976); see also Sipe v. Amerada Hess Corp., 689 F.2d 396, 401 (3d Cir.1982). Accordingly, though the State of New York through both its highest official, the Governor, and its chief tax official, the Commissioner of Taxation and Finance, indicates that it would waive the bar of the Tax Injunction Act if it could, it cannot. Thus, if the statute is applicable, we cannot exercise jurisdiction in this action.
 
 
 26
 As recognized by the district court, in adopting the Tax Injunction Act, Congress acknowledged the imperative need of the states to administer their own fiscal operations, and it thus intended to prevent federal court interference with the assessment and collection of state taxes. California v. Grace Brethren Church, 457 U.S. at 411, 102 S.Ct. at 2509; Rosewell v. LaSalle Nat'l Bank, 450 U.S. at 522, 101 S.Ct. at 1234. Congress was also motivated by a concern for according comity to state courts where adequate state remedies to tax statutes existed.
 
 
 27
 The overarching importance of the Tax Injunction Act is underscored by the fact that, though by its terms it seems to apply only to injunctive actions, it is construed to prohibit the district courts from granting declaratory relief in cases involving constitutional challenges to state tax acts. California v. Grace Brethren Church, 457 U.S. at 411, 102 S.Ct. at 2509. The same result is reached as a matter of comity, which supplements the Tax Injunction Act, when only money damages are sought. Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); see also Sipe v. Amerada Hess Corp., 689 F.2d at 403-04. The purposes served by the Tax Injunction Act are no less thwarted by actions brought by persons other than taxpayers to challenge the imposition of state taxes than by taxpayers' actions.[11] Thus, we hold that the Tax Injunction Act bars this action by the legislators if the taxpayers have a plain, speedy and efficient remedy in the courts of New York under state law.[12]
 
 
 28
 The issue for us to resolve, then, is whether New York provides a plain, speedy and efficient remedy in its courts for the taxpayers' claims. This exception to the bar of the Tax Injunction Act is to be read narrowly. California v. Grace Brethren Church, 457 U.S. at 413, 102 S.Ct. at 2510. See also Robinson Protective Alarm Co. v. Philadelphia, 581 F.2d 371, 376 (3d Cir.1978); Garrett v. Bamford, 538 F.2d 63, 67 (3d Cir.), cert. denied, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976). For a state remedy to be adequate, it must satisfy certain procedural criteria. Rosewell v. LaSalle Nat'l Bank, 450 U.S. at 522, 101 S.Ct. at 1233-34; Sipe v. Amerada Hess Corp., 689 F.2d at 404. Thus, a state remedy will be sufficient if it "provides the taxpayer with a 'full hearing and judicial determination' at which [the taxpayer] may raise any and all constitutional objections." California v. Grace Brethren Church, 457 U.S. at 412, 102 S.Ct. at 2509.
 
 
 29
 There is no doubt but that New York has broad provisions for remedies to taxpayers challenging taxes. N.Y. Tax Law § 687 (McKinney 1987) allows taxpayers to present administrative claims for refunds and N.Y. Tax Law § 689(c) (McKinney 1987) permits administrative review. Under N.Y. Tax Law § 690(b) (McKinney 1987), there can be judicial review of the administrative determinations and under N.Y. Tax Law § 690(d) (McKinney 1987), if deficiencies are determined, the amount disallowed is to be returned to the taxpayer. Furthermore, taxpayers are not limited to administrative relief and may file actions seeking declaratory judgments to establish their right to refunds when they claim, as they do here, that the tax is unconstitutional. See Tully v. Griffin, 429 U.S. at 75, 97 S.Ct. at 223. Thus, in Tully v. Griffin, the Supreme Court held, in a sales and use tax assessment case, that the district court did not have jurisdiction to entertain a taxpayer's injunctive action against the collection of the tax because New York law gave the taxpayer a plain, speedy and efficient remedy.
 
 
 30
 The taxpayers seek to avoid the holding in Tully v. Griffin, by contending that it is not clear that taxpayers who pay unconstitutional taxes under the Reform and Reduction Act will receive a refund. We reject this argument for several reasons. First, of course, the appellees have represented to this court that to the extent that unconstitutional taxes are collected, taxpayers following New York procedure will get a refund.[13] Therefore, as a practical matter, we do not think that the taxpayers' fears are well-founded.[14]
 
 
 31
 Second, we are confident that, even without appellees' assurances, a taxpayer properly pursuing New York procedure will obtain a refund for unconstitutionally assessed taxes under the Reform and Reduction Act. While it is true, as the taxpayers assert, that the New York courts have sometimes declined to give retroactive effect to decisions invalidating tax assessments, see, e.g., Foss v. City of Rochester, 65 N.Y.2d 247, 480 N.E.2d 717, 491 N.Y.S.2d 128 (1985), these cases seem to involve real estate taxation. The appellees point out in their brief that "[p]laintiffs have not cited a single case in which New York State refused to refund monies collected pursuant to a provision of the Tax Law or, specifically, the personal income tax provisions of Article 22, later declared unconstitutional." While the appellants adhere in their reply brief to their position that the right to a refund is in doubt, they do not directly challenge this contention nor do they supply a case in which a New York court has found a New York income tax unconstitutionally applied and yet denied a refund. Thus, we have no reason to believe that New York will not honor the provisions of its statutory law providing for refunds if the taxpayers are successful on the merits in state proceedings and properly pursue state remedies.
 
 
 32
 Third, regardless of our conclusion based on the appellees' representations and our understanding of New York law that a successful taxpayer properly pursuing state procedures will obtain a refund, the critical criterion as to the adequacy of the remedy available to the taxpayers is not the relief which they can obtain in New York proceedings, but whether New York provides a forum for presentation of their claims. Thus, as we have indicated, the right which they must be afforded under New York law is the procedural right to make their claims and not the substantive right to recover, and they have that procedural right.
 
 
 33
 The taxpayers rely on Hillsborough Twp. v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946), and Garrett v. Bamford, 538 F.2d at 63, which did allow federal challenges to state taxes, but those cases are not controlling here. In Hillsborough, the availability of a state forum for the entertainment of the constitutional claim was in doubt and the state procedure would have required a separate proceeding to remedy the discrimination if an equal protection violation had been found. In Garrett it was not certain that there was a state forum for the federal claim asserted. 538 F.2d at 67.
 
 
 34
 The appellants also contend that New York does not provide the taxpayers with a plain, speedy and efficient remedy because N.Y.Civ.Prac.L. & R. § 5519(a) (McKinney Supp.1989) provides for an automatic stay if the state appeals from an adverse judgment. Thus, appellants contend that even if they obtain injunctive relief from a state trial court, the taxing authorities could collect the disputed taxes during the pendency of a state appeal.
 
 
 35
 We reject this argument for two reasons.[15] To start with, the successful taxpayer would be the appellee in an appeal by the state and under N.Y.Civ.Prac.L. & R. § 5519(c) (McKinney 1978) could move to vacate the stay. See Long Island Lighting Co. v. Town of Brookhaven, 889 F.2d 428, 433 (2d Cir.1989). Thus, the taxpayers' procedural remedies are not infringed by the provision for an automatic stay. Furthermore, a provision for an automatic stay with its vacation possible, leaves a taxpayer who prevails in the trial court in a no less favorable position than a taxpayer who loses in the trial court but wins on appeal. At worst, each remains liable for the tax pending appeal. Yet we cannot imagine that a state remedy would be inadequate simply because a taxpayer to be vindicated must go through a two-tier or multi-tier proceeding. Accordingly, we will not hold a state remedy inadequate simply because a taxpayer, whether successful or not in the trial court, remains obligated for the tax pending appeal.
 
 
 36
 In this regard we point out that the Supreme Court has held that a state remedy is not inadequate simply because a taxpayer's remedy requires that the taxpayer pay the challenged tax and then seek a refund. California v. Grace Brethren Church, 457 U.S. at 412, 102 S.Ct. at 2509-10; Rosewell v. LaSalle Nat'l Bank, 450 U.S. at 528, 101 S.Ct. at 1237. In the light of that ruling, we decline to judge the adequacy of a remedy on the basis of the allocation under state law of interim responsibility for the tax pending final determination of the validity of its assessment.
 
 
 37
 In view of the foregoing, we conclude that New York provides a plain, speedy and efficient remedy in its courts for the taxpayers' claims, and accordingly the orders of April 13, 1989, and June 29, 1989, will be affirmed.
 
 
 
 *
 Honorable Robert S. Gawthrop, III, United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 In fact nonresident taxpayers in some cases may not receive the reduction. See footnote 11, at 1104, infra. Married taxpayers filing joint returns are treated as a single unit under the Reform and Reduction Act
 
 
 [2]
 According to the appellees this additional tax was assessed one year before the basic changes made by the Reform and Reduction Act became effective and was levied on both residents and nonresidents as a transitional tax, assessed during the period in which the previous rates favoring earned over unearned income were phased out by the Reform and Reduction Act. We note, however, that the appellants and the district court indicate the additional tax became effective in 1988. We need not, however, reconcile this discrepancy as our result is not in any way affected by it. The appellees have not explained the mechanics of applying the additional tax on unearned income one year prior to the basic changes affected by the Reform and Reduction Act but they are not important for this opinion. The threshold was $50,000 of New York adjusted gross income for married taxpayers filing separate returns. N.Y.Tax Law § 601(d)(2) (McKinney 1987). We have described the formula as the appellees have in their brief. The statutory language is slightly different but has the same result
 
 
 [3]
 The appellees offered an illustration of the operation of this additional tax in an affidavit submitted in opposition to appellants' application for a preliminary injunction. In the example, after the additional tax for unearned income was computed, it was added to the tax computed on the taxable income under the basic tax, and then the fraction in which the numerator is the New York source income and the denominator is the federal adjusted gross income was multiplied against the total. We have broken the tax into its component parts for ease of illustration, but this does not change the net tax due
 
 
 [4]
 The misleading aspect of the title "Tax Reform and Reduction Act of 1987" is not without significance. Appellees in arguing that the appellants are not entitled to preliminary relief, point to what appellees characterize as appellants' "delay and inaction" in bringing this action, as the Reform and Reduction Act was enacted in November 1987, but this case was not brought until March 8, 1989. But surely the title of "Reform and Reduction Act" was not calculated to warn the New Jersey taxpayers of what was coming. These taxpayers have discovered to their sorrow that on some occasions you can no more tell the content of a tax law by its title than a book by its cover
 
 
 [5]
 To some degree the New Jersey taxpayers receive relief from the Reform and Reduction Act because of a credit against their New Jersey income taxes, but the relief is only partial as the credit is not pro tanto, N.J.Stat.Ann. § 54A:4-1 (West 1986), and the New York tax may exceed the New Jersey tax against which a credit can be taken. Compare N.Y.Tax Law §§ 601(a), (b) and (c) with N.J.Stat.Ann. § 54A:2-1 (West 1986)
 
 
 [6]
 In an affidavit filed for consideration at the application for the preliminary injunction, the New York Deputy Commissioner for Tax Policy Analysis in the Department of Taxation and Finance, indicated that the Reform and Reduction Act "provided tax cuts for both residents and nonresidents." Our analysis indicates that while the highest marginal rate is reduced, there will not necessarily be tax cuts for nonresidents, particularly those with a substantial non-New York income, which will raise a high percentage of their overall income into the highest marginal New York bracket. In any event, the Reform and Reduction Act will cause some shifting of the tax burden to non-New Yorkers whose position as compared to New York residents is less favorable than under previous law, a consequence described as more equitable by the Deputy Commissioner since it will reflect "their ability to pay their fair share."
 
 
 [7]
 We are exercising plenary review because we are deciding the case as a matter of law
 
 
 [8]
 We do not see why this is so. We perceive of no reason why the legislators could not bring a declaratory judgment action challenging the Reform and Reduction Act in New York. While we realize that the New York courts might conclude, as did the district court, that the legislators do not have standing, certainly Congress by enacting the Tax Injunction Act did not intend to override ordinary principles regarding standing and permit a federal court to exercise jurisdiction in a state tax case, when the reason a litigant does not have a plain, speedy and efficient remedy in the state courts is that he or she does not have standing to sue
 
 
 [9]
 The appellants do not contend that the appellees can waive the jurisdictional bar of the Tax Injunction Act if it is applicable. Nevertheless, because of appellees' offer to do so we regard the issue as properly presented
 
 
 [10]
 In their brief, the appellees set forth that the Tax Injunction Act deprived the district court of subject matter jurisdiction but that "[s]ubject to and but for that bar, the district court's subject matter jurisdiction was properly invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4)." That concession, however, may be too broad because even before enactment of the Tax Injunction Act, federal courts as a matter of equity practice and comity did not interfere with state tax collection procedures preserving the taxpayers' federal rights. See Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); Tully v. Griffin, 429 U.S. at 73, 97 S.Ct. at 222. Thus, our suggestion that but for the Tax Injunction Act the district court might have been able to exercise jurisdiction, means only that a possible basis for jurisdiction could have been demonstrated by laying the complaint against the jurisdictional statutes. It does not mean that such jurisdiction would have been taken, as the principles of comity against the exercise of jurisdiction in state tax cases have survived the enactment of the Tax Injunction Act
 
 
 [11]
 This case demonstrates why the federal courts should be reluctant to accept actions challenging state taxes. At oral argument, we pointed out to the Assistant Attorney General that even without regard for the appellants' overall challenge to the Reform and Reduction Act, it seems to tax some non-New York source income of nonresidents, as under N.Y.Tax Law § 612(b)(1) (McKinney 1987), the New York adjusted gross income will ordinarily include interest income on obligations of states other than New York. The apparent problem is caused by the circumstance that under the Reform and Reduction Act the denominator of the fraction multiplied against the tax initially calculated on the taxable income may not include such income, as the denominator is the federal adjusted gross income for the taxable year, N.Y.Tax Law § 601(e)(1) (McKinney 1987), and interest from public entities may not be included in federal adjusted gross income. 11 U.S.C. § 103(a). The same may be true for other income as well. N.Y.Tax Law § 612(b)(2) (McKinney 1987). The Assistant Attorney General in response pointed out that New York had developed a large number of procedures to implement the Reform and Reduction Act and to resolve problems under it. Ironically, this apparent infirmity in the Reform and Reduction Act demonstrates why the federal courts should not exercise jurisdiction in state tax cases, for by declining to do so they give the state the opportunity to adjust to possible problems in the application of its law. See Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. at 108-09 n. 6, 102 S.Ct. at 182 n. 6
 
 
 [12]
 This conclusion renders moot an argument raised by the legislators that the district court erred in making factual findings that the Reform and Reduction Act has only a minimal impact on New Jersey revenues, instead of accepting the contrary allegation of the complaint as true for purposes of the appellees' motion for summary judgment which was treated as a motion to dismiss
 
 
 [13]
 The Assistant Attorney General repeated this representation at oral argument before us
 
 
 [14]
 While this court has recognized the doctrine of judicial estoppel to bind parties to factual and legal positions taken in litigation in both the case in which the party has taken a position and in subsequent litigation, see Lewandowski v. National R.R. Passenger Corp., 882 F.2d 815 (3d Cir.1989); Murray v. Silberstein, 882 F.2d 61 (3d Cir.1989), our result is not dependent on a prediction that the New York courts would reach a result similar to ours if the state attempted to change its position
 
 
 [15]
 Of course, it is completely speculative to suggest that the state will attempt to collect a tax held by a trial court to be unconstitutional. But we will assume that such an attempt might be made