947 F.2d 547
 60 USLW 2136
 Brendan S. KELEHER, Treasurer of the City of Burlington,
Vermont, and Treasurer for the Board of School
Commissioners of the City of Burlington;
City of Burlington,
Plaintiffs-Appellants,
v.
NEW ENGLAND TELEPHONE & TELEGRAPH COMPANY, Defendant-Appellee.
 No. 1567, Docket 91-7199.
 United States Court of Appeals,
Second Circuit.
 Argued May 30, 1991.
Decided July 30, 1991.
 
 James J. Dunn, Burlington, Vt. (Joseph E. McNeil, John T. Leddy, Office of City Atty. and Corp. Counsel, of counsel), for plaintiffs-appellants.
 R. Allan Paul, Burlington, Vt. (Charles E. Finberg, Paul, Frank & Collins, Inc., of counsel), for defendant-appellee.
 Before OAKES, Chief Judge, KAUFMAN and WALKER, Circuit Judges.
 OAKES, Chief Judge:
 
 
 1
 This case presents a novel and important question concerning the power of the federal courts to interfere in state and local taxation affairs. Specifically, we must decide whether and to what extent the Tax Injunction Act (the "Act"), 28 U.S.C. § 1341 (1988), limits the federal courts' jurisdiction over state and local tax enforcement actions. For the reasons set forth below, we conclude that the Act creates an absolute jurisdictional bar to federal involvement in state and local revenue collection schemes, and that, as a result, a federal court may not play any role at all in the tax enforcement efforts of state or local governments. Accordingly, we vacate the judgment of the district court and remand with instructions to dismiss the case for lack of subject matter jurisdiction.
 
 BACKGROUND
 
 2
 Section 48 XL of the Burlington City Charter (the "Charter") empowers the City to enter into franchising agreements with public utility companies and authorizes the City, in granting franchises, to charge "any sum or sums of money" that "shall be just and reasonable."
 
 
 3
 On June 12, 1990, acting pursuant to Section 48 XL, the City of Burlington (the "City") adopted the Street Franchise Fees Ordinance (the "Ordinance"), which requires utility companies using and occupying City streets to pay a franchise fee in the amount of 2 1/2% of their gross revenue. Under the Ordinance, companies that had entered into valid franchise agreements with the City before the Ordinance was enacted would remain subject to those agreements, and would therefore not be required to comply with the Ordinance's franchise fee schedule.
 
 
 4
 Following enactment of the Ordinance, the City brought this diversity action in the United States District Court for the District of Vermont, Fred I. Parker, Judge, seeking a declaration that its 1985 agreement with New England Telephone & Telegraph Co. ("NET"), adopted for the purpose of settling a suit brought by NET against the City, did not constitute a prior franchise agreement and thus did not exempt NET from complying with the Ordinance's fee schedule. It also sought compensatory damages in the amount of $170,000 for franchise fees past due. NET moved to dismiss, not on the ground that the Agreement exempted it from complying with the Ordinance's fee schedule, but rather on the theory that the Ordinance itself was invalid because it exceeded the City's powers under section 48 XL.
 
 
 5
 In an opinion dated January 2, 1991, 755 F.Supp. 117, the court granted NET's motion. It reasoned that, under Vermont law, a municipality is entitled to raise revenue only pursuant to a specific grant of revenue raising authority, and that such power had not been granted to the City in section 48 XL of the Charter. Thus, it concluded, the City was authorized to charge only an administrative or regulatory fee to cover the cost of regulating a utility's use of the streets, and was not permitted to raise general revenue by requiring utilities to turn over a percentage of their revenues.
 
 
 6
 The City then moved to vacate the court's order. It claimed that, because the order declared the entire Ordinance invalid, it had the effect of "enjoin[ing], suspend[ing] or restrain[ing]" the City's collection of revenue, and therefore violated the Tax Injunction Act, 28 U.S.C. § 1341 (1988). The court denied this motion, and the City appealed.
 
 DISCUSSION
 
 7
 On appeal, the City reasserts its claim that, under the Act, the district court lacked jurisdiction to assess the Ordinance's validity. We agree with the City that the Act applies to this case, but we believe that the City has underestimated the degree to which the Act's jurisdictional bar extends. In our view, the Act creates an absolute prohibition on federal judicial involvement in state or local revenue collection schemes, and, as a result, we believe that the district court lacked jurisdiction over the City's enforcement action from the start. Accordingly, we vacate the judgment of the district court and remand with instructions to dismiss the case for lack of jurisdiction.
 
 
 8
 The Tax Injunction Act prohibits courts from "enjoin[ing], suspend[ing] or restrain[ing]" the collection of any tax under state law whenever "a plain, speedy and efficient remedy may be had in the courts of such State."[1] 28 U.S.C. § 1341 (1988). Given the broad definition of the word "tax" under the Act, see, e.g., Robinson Protective Alarm Co. v. City of Philadelphia, 581 F.2d 371, 374-76 (3d Cir.1978) (suggesting that, under the Act, the word "tax" encompasses any state or local revenue collection device), it is apparent that the Ordinance's franchise fees fall within the Act's reach. It is also clear that, by declaring the Ordinance invalid, the January 2 order had the effect of "restraining" the collection of a tax. See California v. Grace Brethren Church, 457 U.S. 393, 411, 102 S.Ct. 2498, 2509, 73 L.Ed.2d 93 (1982) (holding that the Act proscribes declaratory judgments as well as injunctive relief). Finally, there is no indication that NET lacks a "plain, speedy and efficient" means of challenging the Ordinance's validity in the state courts. See generally E. McQuillin, The Law of Municipal Corporations § 44.180, at 585-86 (3d ed. 1986) (outlining means by which a taxpayer may recover wrongfully exacted taxes). Accordingly, we agree with the City that the January 2 order, to the extent it declared the Ordinance invalid, violated the plain meaning of the Act's terms.
 
 
 9
 The more difficult question, however, is what to do next. As we see it, we have three options. First, we could adopt the position taken by NET, and hold that the Act does not apply when the state or local government itself asserts the jurisdiction of the federal courts. The problem with this analysis, however, is that the Act is generally thought of as a non-waivable jurisdictional bar that absolutely precludes federal courts from assessing the validity of state or local taxation schemes. See, e.g., Hardwick v. Cuomo, 891 F.2d 1097, 1103-04 (3d Cir.1989); City of Burbank v. State of Nevada, 658 F.2d 708, 709 (9th Cir.1981) (citing cases); P. Bator, D. Meltzer, P. Mishkin & D. Shapiro, Hart & Wechsler's The Federal Courts and the Federal System 1339 (3d ed. 1988); cf. California v. Grace Brethren Church, 457 U.S. 393, 417, 102 S.Ct. 2498, 2512, 73 L.Ed.2d 93 (1982) (applying the Act to bar a federal court from enjoining a state tax collection scheme even where the state itself had attempted to remove the case to federal court). Thus, the fact that the City, rather than NET, was the party that invited the intervention of the federal courts does not serve to eliminate the Act's jurisdictional bar.[2]
 
 
 10
 The second option would be to adopt the position urged on us by the City, which is to decline to hear NET's challenge to the validity of the Ordinance, but to retain jurisdiction over the underlying enforcement action itself. However, were we to hold that the court lacked jurisdiction to assess the Ordinance's validity, we would be eliminating what appears to be NET's best defense to the City's enforcement efforts.[3] Thus, although NET would be free in a state court enforcement proceeding to challenge the Ordinance's legality, see E. McQuillin, The Law of Municipal Corporations § 44.135f, at 475 (3d ed. 1986), the fact that the City chose to bring this proceeding in federal court would preclude NET from raising what appears to be its most promising legal defense. For two reasons, we find it hard to believe that this is the result that Congress had in mind. First, the Act was intended to shield states and cities from federal interference in their taxing affairs. See Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 527, 101 S.Ct. 1221, 1236, 67 L.Ed.2d 464 (1981). However, allowing courts to assume jurisdiction over tax enforcement actions, while simultaneously barring them from hearing the defendant's challenge to the tax's validity, would turn the Act into a sword with which a state or local government could obtain federal judicial enforcement of its taxation schemes without having to respond to a taxpayer's full range of legal defenses. The purposes behind the Act do not support such a patently unfair result. Second, a principal reason that Congress enacted the Act was to eliminate the unfair advantage that out-of-state taxpayers could obtain by bringing their tax challenges in federal court under diversity jurisdiction, thereby avoiding the usual state court requirement of paying first and litigating later. See Note, Clarifying Comity: State Court Jurisdiction and Section 1983 State Tax Challenges, 103 Harv.L.Rev. 1888, 1892 (1990). Allowing an enforcement action to proceed without giving the taxpayer an opportunity to challenge the tax's validity, however, would simply replicate this disparity in the reverse: rather than causing in-state taxpayers to suffer, the Act would now penalize out-of-state taxpayers, because states and localities could deny them the right to challenge a tax's legality simply by bringing an enforcement proceeding in federal court. This result, too, would seriously undermine the underlying congressional goals.
 
 
 11
 Rather, in our view, the most plausible construction of the Act lies in a third ground: namely, that by divesting the federal courts of jurisdiction to "enjoin, suspend or restrain" state and local taxes, Congress also eliminated federal jurisdiction over all cases--including tax enforcement actions--in which an inquiry into the validity of a state or local tax is necessary to afford one of the parties a complete defense. This interpretation of the Act not only avoids the inequities of the second approach, but also comports with what is generally seen as the central purpose behind the Act's jurisdictional bar--to keep the federal judiciary out of the sensitive area of state and local taxation. See, e.g., Franchise Tax Bd. v. Alcan Aluminium Ltd., 493 U.S. 331, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990) (noting that the Act " 'was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes' ") (quoting Rosewell, 450 U.S. at 522, 101 S.Ct. at 1234). Accordingly, we conclude that Congress, in removing the federal courts' power to "enjoin, suspend or restrain" state and local taxes, necessarily intended for federal courts to abstain from hearing tax enforcement actions in which the validity of a state or local tax might reasonably be raised as a defense.[4]
 
 
 12
 Even if Congress did not intend the Act's jurisdictional bar to reach so far, however, we believe that general principles of federal court abstention would nonetheless require us to stay our hand here. In Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court noted that "[a]bstention is ... appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." Id. at 814, 96 S.Ct. at 1244 (citing Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959)). See also Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The scope of a state or local government's power to tax is certainly one such question. We therefore think it best to stay out of this area entirely, and to abstain from asserting jurisdiction over a tax enforcement action where the legality of the underlying tax is an essential element of the taxpayer's defense.
 
 
 13
 Vacated and remanded with instructions to dismiss for lack of subject matter jurisdiction.
 
 
 
 [1]
 The Act applies to local, as well as state, taxes. See Alnoa G. Corp. v. City of Houston, 563 F.2d 769, 771 (5th Cir.1977) (per curiam), cert. denied, 435 U.S. 970, 98 S.Ct. 1610, 56 L.Ed.2d 62 (1978)
 
 
 [2]
 To be sure, language in the Ninth Circuit's opinion in State of Arizona v. Atchison, Topeka & Santa Fe R.R. Co., 656 F.2d 398 (9th Cir.1981), suggests a contrary view. See id. at 402 (arguing that the policies behind the Act "would not be served by applying the statute to bar a state itself from invoking the jurisdiction of the federal courts"). However, that language conflicts with the overwhelming majority of cases that have addressed this issue--including a Ninth Circuit opinion decided just four months later, see City of Burbank v. State of Nevada, 658 F.2d 708, 709 (9th Cir.1981) ("[T]he jurisdictional limitation of § 1341 is not waivable.")--and we decline to follow it here
 
 
 [3]
 Of course, NET could still argue that the Ordinance does not apply under the circumstances of this case, on the theory that the 1985 agreement between NET and the City exempts NET from the Ordinance's fee schedule. It is not clear, however, that NET would prevail on this defense
 
 
 [4]
 To the extent that Appling Cty. v. Municipal Elec. Auth., 621 F.2d 1301 (5th Cir.) (per curiam), cert. denied, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980), suggests a contrary result, we respectfully disagree